# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* Estate of LEON ERSON BARRENGER
TRUST.

---

SCOTT BARRENGER, as TRUSTEE of the
Estate of LEON ERSON BARRENGER TRUST,

UNPUBLISHED
May 11, 2017

Appellant,

v

No. 332837
Newaygo Probate Court

LYNN BARRENGER, also known as BUTCH
BARRENGER,

LC No. 15-006131-DE

Appellee.

---

Before: WILDER, P.J., and BOONSTRA and O'BRIEN, JJ.

PER CURIAM.

Appellant, Scott Barrenger, as Trustee of the Estate of Leon Erson Barrenger, appeals as of right the probate court's order denying the motion to confirm amendment to trust. We reverse.

On May 13, 2005, Leon E. Barrenger executed "THE LEON E BARRENGER TRUST," which identified himself as both the trustor and the trustee. It provided, in pertinent part, the following with respect to how property was to be distributed upon his death:

> E.    Distribution of Remainder of Trust Estate. Upon the death of the Trustor, the Trustee shall, after paying or reserving for all amounts payable, as provided in ARTICLE IV.A. through D., divide the remainder of the trust estate into four (4) equal shares set forth as follows and shall hold, administer and distribute each share according to the provisions of ARTICLE IV.F. hereinbelow: One (1) share each to Lynn H BARRENGER, GARY P BARRENGER, JUDY A GROOTERS, and SCOTT R BARRENGER.

On that same day, Leon also executed the "LAST WILL AND TESTAMENT OF LEON E BARRENGER," which provided, in pertinent part, that "[a]ll of [Leon's] personal and household effects were transferred to the Trust . . ." and that "all the rest, residue and remainder of my

-1-

property of every kind and description (including lapsed legacies and devises), wherever situated and whether acquired before or after the execution of this Will" were "devise[d] and bequeath[ed]" "to the Trustee under the Trust executed by [him] on the same date of the execution of this Will."

Over the next several years, it appears that Leon and one of his sons, Lynn, also known as Butch, Barrenger, who is the appellee in this matter, had "a falling out." Appellant has provided four writings purportedly made by Leon to support this. The first ("Exhibit 1") is typed, signed, and dated, and it states as follows: "I LEON BARRENGER DISOWN LYNN BARRENGER HE IS DISOWNED AND REMOVED FROM ANY INHEARATANCE ALSO I DON'T WANT HIM TO ANY MEMORIAL IF THEY HAVE ONE SIGNED." The second ("Exhibit 2") is typed, and it states as follows:

DEAR SCOTT, HAPPY EARLY HAPPY BIRTHDAY

AM SENDING YOU YOUR PRESENT EARLY THIS YEARR AS I AM SKIPPING MAY 26 THIS YEAR ALSO SKIPPING BUTCH,S HEISNT GETTING NO MOREMOOLA FROM ME WILL SEND YOY ANOTHER CHECK AROUND XMAS,HOPE EVERYTHING IS K WILL CALL YOU LATER LOVE DAD


TO BOTH OF YOU

The third ("Exhibit 3") is partially typed, partially handwritten, and signed twice, and it states as follows:

DEAR JUDY

HAPPY BIRTHDAY HOPE YOU HAVE A GOOD TIME I AM NOT GOING TO HAVE A BIRTHDAY PARTY THIS YEAR, IVE HAD ENOUGH PARTIES,I ALL READY TOLD GARY SO HE WILL KNOTIFY SOME OF THE REST OF THE GANG, I HAD MY SURGERY DONE THEY HAD TO GO IN FIVE TIMES TO GET ALL OF THE CANCER,GARY IS READY TO SWITCH DOCTORS HE ISNT TO HAPPY WITH THEWAY THINGS ARE GOING EATHER I AM THINKING ABOUT GETTING AGO CART SO I CAN GO TO THE STORE BY MY SELF IF THE WEATHER LOOKS LIKE LAST YEAR I WILL THYK ABOUT GOING SOUTH A WAYS FOR WARMER WEATHER

NO BIRTHDAY PARTY FOR ME THIS YEAR I HAVE HAD ENOUGH FOR NOW,AM  AM SENDING YOU FOURTEEN HUNDRED DOLLARS FOR NOW,I DISENHEARTED BUTCH HE CALLED ME A STUPID IDIOT SO I WILL GIVE HIS SHARE TO THE GRANDKIDS

AT LEAST IT WON'T BE BUYING HIM BEER,I SENT QUINN AND KAIT_LYNN THE SAME THEY CAN USE IT OR SAVE IT     FOR COLLEGE , GLAD YOU GUYS ENJOYED YOURSELF AT THE PARKS

WITH ALL MY BEST WISHES AND LOVE

DAD

PS  PLEASE FORGIVE MY ERRORS

*also to far to walk to get a birthday card*

*no CAR*

*Dad*

The fourth ("Exhibit 4") is handwritten and signed, and it states as follows:

*Dear Quinn,*

*save some for a rainy day, Butch got his big mouth going and he talked himself right out of the Barrenger trust fund, now I can leave you & Kaitlyn $14,000.00 a year Tax free.*

*Love*

*Grandpa*

Leon passed away on September 13, 2014.  Upon his death, appellant was appointed as the estate's personal representative according to Leon's will.  Proceedings commenced, interested parties were identified, and appellant eventually filed a "Motion to Confirm Amendment to Trust."  In support of his position, appellant argued that at least three of the four writings quoted above constituted amendments to the trust pursuant to MCL 700.7602(3) and binding caselaw.  Appellee responded, moving to dismiss the motion because "it is unknown whether Leon E Barrenger typed this letter [presumably Exhibit 1] himself or knew what he was signing" and because the alleged amendments violated MCL 700.2502, which appears to apply only to wills.  Over the next several months, the trial court had several hearings and the parties filed several more briefs, arguing and rearguing their positions as described above.

At the first hearing, the trial court decided to "give the parties approximately four to six weeks to further brief the issue [of "whether this is a valid amendment or not"] because [the trial court was] not satisfied . . . ."  It elaborated as follows:

My problem is he never said, "I hereby amend my trust."

\* \* \*

I've got to have something more, otherwise I'm left with basically, perhaps new law in Michigan or at least clarifying it because my gut reaction, frankly, is that

unless he says, "I'm hereby amending my trust," it's not amendment to the Trust. It's got to be more clear than that.

The trial court expressed similar concerns at the second hearing, explaining that it was "tempted to either take this under advisement or adjourn it so [it could] read [cases cited by appellee], maybe issue a brief written opinion." It explained its feelings at that point as follows:

> Typically, we look at -- it's like drafting a will. Normally you're going to -- or a power of attorney; you normally revoke it the same way you created it. If it required two witnesses, you have two witnesses and it's going to be labeled.

> * * *

> [Appellant's counsel], so you know where I'm coming from, if all you had was the first writing, "I Leon Barrenger, disown Lynn Barrenger," I wouldn't say that's good enough to amend a Trust. I think he's got to reference the Trust. At least reference the Trust, but he doesn't do that, he says he disinherits him. On a broad, very broad plain, I understand that it could be interpreted to mean that, by golly, I don't want him to get a dime, but he needs to say it. I think the legislature, my guess is, and maybe that's all it is a[t] this point, maybe you two can furnish me with the legislative records, if any, showing what the intent was, if anybody is able to discern that ever. My guess is the legislature is thinking, well if somebody writes out, "I hereby amend my trust to disown so and so," then signs it and dates it, then that ought to be allowed, if indeed extrinsic evidence like that or if it measures up to the formality set forth in the trust document then I'd go along with it. But it -- I'm not sure the legislature is just saying any old writing, especially when it doesn't reference the Trust, is enough to amend the Trust.

At the third hearing, the trial court began by explaining that it was "leaning" toward "set[ting] it for trial [to] hear all the extrinsic evidence on both sides and see if that will enlighten the Court." The trial court then expressed similar concerns with the lack of formality used to allegedly amend the trust:

> Was dad just blowing off steam or was he really making a -- what I'm looking for is kind of a formal amendment to a trust? That's why I'm beginning to think, well, maybe I ought to take a second look and allow extrinsic evidence and see just what dad's attitude was.

> * * *

> I think where they went to all the expense and trouble of signing formal trust, it seems to me the first thing you'd think about is I got to go back probably to the very same lawyer and get this sucker amended. I don't think most lay people would say, "Gee, even though I had to go through all of this formality and all this expense to create this, I can just sign anything I want and amend it."

> * * *

-4-

That was my original problem with this whole thing. I thought, "Boy, if you're going to amend a trust, you ought to at least say I'm hereby amending my trust."

\* \* \*

It looked to me like when you say, I'm going to disinherit somebody or say I removed him from any inheritance, that's about stuff going under your will either by laws of testacy or intestacy, it's got nothing to do with a trust."

\* \* \*

And again thinking if I'm going to go to formalities of creating a trust, I ought to go to those same formalities in amending a trust, otherwise people are too much given to bursts of emotion where they say things that they regret. And to write something down doesn't mean that's really what he's trying to do, but by golly, if he goes to a lawyer, has it drawn up, and signs the document then prepared by the lawyer, it's pretty hard to argue with that. It's pretty darn clear he wanted to disinherit and remove a beneficiary from a trust, but in this case Leon did none of that."

Ultimately, because of its concerns in this regard, the trial court explained that it was "inclined to set a tentative trial date where [it planned] to hear all the extrinsic evidence." However, no trial was ever held. Rather, on March 24, 2016, the trial court issued a written opinion, which addressed two issues: (1) "Is extrinsic evidence admissible in trust cases?" and (2) "If extrinsic evidence is admissible, did any of the four exhibits amend the Barrenger trust?" In addressing these issues, the trial court first "determine[d] that the grantor clearly set forth the method to be followed should he elect to amend the trust at a later date." The pertinent trust provisions provides as follows:

> A.    Amendment and Revocation.  During the lifetime of the Trustor, this trust may be altered, amended or revoked, in whole or in part, by written instrument signed by the Trustor and filed with the Trustee, and upon any revocation, all such assets shall return to the Trustor free of trust. By way of construction, all property transferred to the trust is separate property of the Trustor and shall remain separate property in this trust. After the death of the Trustor, this trust may not be altered, amended or revoked.

Based on this "clear, and not ambiguous" language, the trial court concluded, the trust "d[oes] not allow for any other method to amend the trust."

Consequently, the trial court next addressed whether the four writings offered by appellant did, in fact, amend the trust:

> The Court finds that the four writings submitted by the Trustee hardly qualify as a "written legal document." Indeed, three of the four are clearly personal letters, and in no way legal documents. The fourth addresses an inheritance, not a trust; a trust, after all, is something very different from an inheritance, being by its very essence more in the nature of a property interest

-5-

held by one person at the request of another for the benefit of a third party. [(citation omitted).]

However, acknowledging "that MCL 700.7602(3)(b) provides two alternatives to allowing the amendment of a trust aside from substantially complying with a method provided in the terms of the trust itself," the trial court proceeded to address each writing individually to determine whether the "alternatives" set forth in MCL 700.7602(3)(b) were satisfied.

With respect to Exhibit 1, the trial court recognized that there was "a clear indication that Lynn Barrenger is not to receive an inheritance, a bequest, or a devise," but nevertheless concluded that the writing was "absolutely ineffective in creating an amendment of the trust itself" because it "does not at all refer to the trust, which is a completely different entity than an inheritance." With respect to Exhibits 2 and 3, the trial court, relying on this Court's opinion in *In re Bisbikis Trust*, unpublished opinion per curiam of the Court of Appeals, issued November 20, 2014 (Docket No. 317588), explained that it was insufficient because they are "simply personal letter[s]." "In any event," the trial court elaborated, "[d]isinheritance . . . does not equal nor constitute amendment of a trust." Finally, with respect to Exhibit 4, while the trial court acknowledged that it was "clear that Leon Barranger references the trust and his belief that he had excluded Butch," it nevertheless concluded that this language "does not itself read as an amendment of the trust, and certainly is not a 'written instrument.' " Ultimately, the trial court "h[eld] that a simple reference as in exhibit four to the trust is simply not clear and convincingly an amendment of the trust" and that it was only permitted to consider "another writing," "not a group of writings taken as a whole."

Accordingly, the trial court denied appellant's motion and entered a written order reflecting the same shortly thereafter. The trial court offered the following as an explanation of its decision:

The finding and opinion of the Court is not intended to indicate that Leon Barrenger did not have a falling out with his son Butch. Nor that the falling out was not significant. The Court does however find that it was well within the power of the deceased to avoid the conflict now before the Court and if anyone is to blame it is certainly Leon E. Barrenger who being mindful of his creation and execution of a trust, nonetheless ignored a clear and unequivocal amendment of the same--or did he not ignore it but merely chose not to actually amend the trust but rather just publically posture through letters to the other relatives?

It is the Court's conclusion that the legislature did not intend for the willy-nilly amendment of trusts to be accomplished without some clarity if not formality. Clarity strikes this Court as necessitating the trustor to make direct reference to the trust, to directly indicate that he is amending, altering, or revoking the trust, and to sign and date same. While not statutory requirements as such, this Court notes that the statutory standard is clear and convincing evidence, and that barring other forms of evidence, a writing that fails to meet these simple criteria simply cannot be imagined to meet the clear and convincing evidence criteria set forth by statute.

* * *

The Court notes that the parties were not asked to brief the question of extrinsic oral testimony. The Court holds that if the trust were an oral trust, then oral testimony would be appropriate, and the matter would be set for trial. However, by the settlor's own trust provisions, any such alteration, amendment, or revocation had to be in writing. The Court has therefore, considered only all four writings. [(footnotes omitted).]

On appeal, appellant argues that the trial court erred by denying the motion to confirm an amendment. We agree.

"The interpretation of a trust agreement is . . . a question of law reviewed de novo on appeal." *Bill & Dena Brown Trust v Garcia*, 312 Mich App 684, 693; 880 NW2d 269 (2015). When resolving a dispute regarding the meaning of a trust's provisions, this Court is required to ascertain and give effect to the intent of the settlor. *In re Herbert Trust*, 303 Mich App 456, 458; 844 NW2d 163 (2013). This Court does so by looking to the language of the trust itself. *In re Perry Trust*, 299 Mich App 525, 530; 831 NW2d 251 (2013). If the trust's language is unambiguous, this Court must enforce it according to its plain and ordinary meaning. *In re Reisman Estate*, 266 Mich App 522, 527; 702 NW2d 658 (2005). If the trust's language is ambiguous, however, courts may look to the circumstances surrounding the execution of the trust as well as other rules of contract construction. *In re Kostin Estate*, 278 Mich App 47, 53; 748 NW2d 583 (2008).

The issue of whether a trust can be amended is governed by the Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq*. *In re Temple Marital Trust*, 278 Mich App 122, 127-128; 748 NW2d 265 (2008). Similar to a trial court's interpretation of a trust, this Court reviews a trial court's interpretation of statutes in an attempt to ascertain and give effect to the intent of the Legislature. *In re Jajuga Estate*, 312 Mich App 706, 712; 881 NW2d 487 (2015). MCL 700.1201 specifically sets forth rules of construction for applying and interpreting EPIC:

This act shall be liberally construed and applied to promote its underlying purposes and policies, which include all of the following:

(a) To simplify and clarify the law concerning the affairs of decedents, missing individuals, protected individuals, minors, and legally incapacitated individuals.

(b) To discover and make effective a decedent's intent in distribution of the decedent's property.

(c) To promote a speedy and efficient system for liquidating a decedent's estate and making distribution to the decedent's successor.

(d) To make the law uniform among the various jurisdictions, both within and outside of their state.

"The purpose of judicial statutory construction is to ascertain and give effect to the intent of the Legislature. In determining the Legislature's intent, [courts] must first look to the language of the statute itself." *In re MKK*, 286 Mich App 546, 556; 781 NW2d 132 (2009) (citation and internal quotation marks omitted). "When statutory language is clear and unambiguous, courts enforce the language as written." *Lee v Smith*, 310 Mich App 507, 509; 871 NW2d 873 (2015). "Statutory language should be construed reasonably, keeping in mind the purposes of the act." *In re MKK*, 286 Mich App at 556. "A court must give effect to every word, phrase, and clause, and avoid an interpretation that renders any part of a statute nugatory or surplusage." *Lee*, 310 Mich App at 509. "The Legislature is presumed to be familiar with the rules of statutory construction and, when promulgating new laws, to be aware of the consequences of its use or omission of statutory language[.]" *In re MKK*, 286 Mich App at 556.

The issue in this case is whether Leon amended the trust, and MCL 700.7602(3)(a) controls in such a situation. It provides as follows: "The settlor may revoke or amend a revocable trust" "[b]y substantially complying with a method provided in the terms of the trust." Therefore, the ultimate issue before us is whether the four writings offered by appellant reflect substantial compliance with the trust's requirement that any alterations, amendments, or revocations of the trust be made "by written instrument signed by the Trustor and filed with the Trustee." We conclude that three of the four do.

On appeal, appellant claims that the outcome of this case is controlled by *In re Stillwell Trust*, 299 Mich App 289; 829 NW2d 353 (2013). We agree. In that case, the language of the trust provided that the settlor could "by instrument in writing delivered to the Trustee . . . modify or alter this Agreement in any manner . . . ." *Id*. at 292 (internal quotation marks omitted). At some point prior to her death, however, the settlor instructed her adult grandchild to deliver an envelope, which was addressed to the successor trustee, that included several handwritten notes that purported to change the terms of her already-drafted trust. *Id*. at 292-293. The successor trustee sought to admit these notes as amendments to the trust, but a party objected on the grounds that they were insufficient because they were not signed and did not include the word "amendment." *Id*. at 294. The trial court and this Court rejected that argument, holding that the notes clearly reflected the settlor's intent to amend her trust. *Id*. at 295-299.

In this case, the trust expressly provided that it could "be altered, amended or revoked, in whole or in part, *by written instrument signed by the Trustor and filed with the Trustee . . . .*" (Emphasis added.) The noun "instrument" can be defined as "a means whereby something is achieved, performed, or furthered." *Merriam-Webster's Collegiate Dictionary* (11th ed). It appears that at least one of the four writings identified by appellant was, in fact, a written means whereby something was achieved, performed, or further, i.e., a "written instrument," that was signed by Leon and filed with himself that purported to amend how his property would be distributed upon his death. Specifically, Exhibit 1 provided as follows: "I LEON BARRENGER DISOWN LYNN BARRENGER HE IS DISOWNED AND REMOVED FROM ANY INHEARATANCE ALSO I DON'T WANT HIM TO ANY MEMORIAL IF THEY HAVE ONE SIGNED." While, as the trial court pointed out, this does not expressly include phrases like "amendment to trust," it is quite apparent that it reflects an intent to remove appellee from any inheritance, and the only inheritance reflected in the record is that from the trust. The trial court avoided this apparent intent by hypothesizing that these letters were designed to "just publically posture . . . to the other relatives," but nothing in the record supports that position.

Indeed, in our view, this writing, which was typed, signed, and dated, reflect evidence similar to, if not stronger than, that which was present in *Stillwell*, which this Court found sufficient. We are bound by *Stillwell*. MCR 7.215(J)(1).

Additionally, we conclude that Exhibit 3 amended the trust as well. Specifically, it provided that, in lieu of giving what was previously viewed as appellee's "share" of his assets to appellee, he instead wished that "his share [be given] to the grandkids." This writing was partially typed, partially handwritten, and signed twice, and we cannot find any authority to support the trial court's conclusion that the "personal letter" nature of this automatically renders it invalid as an amendment. The trial court rejected Exhibit 3, as well as Exhibit 2 and Exhibit 4, based on this Court's nonbinding decision in *In re Bisbikis Trust*. In that case, this Court differentiated between the writings at issue in that case and those at issue in *Stillwell*, concluding, ultimately, that "the handwritten letter in this case does not clearly indicate Bisbikis's intent to amend the trust." *In re Bisbikis Trust*, unpub at 3. Specifically, this Court relied on the fact that "[t]he language used does not suggest that it was intended to alter the distribution of the trust assets" and the fact that "there is nothing in this case referring to the terms of the trust agreement in conjunction with the inconsistent language." *Id*. at 3-4. In this case, however, the opposite is true. Exhibits 1 and 4 unambiguously reflect Leon's intent to exclude appellee from his inheritance, and Exhibit 3 directs where that portion of his inheritance was to go. Consequently, *In re Bisbikis Trust* certainly does not control.

Ultimately, the trial court's decision appears to have been premised on its repeated belief that something more than an informal note is required to amend a trust. As indicated above, the trial court repeatedly commented that "he never said, 'I hereby amend my trust,' " "that unless he says, 'I'm hereby amending my trust,' it's not an amendment to the Trust,", that "he's got to reference the Trust," that its "guess [wa]s the legislature is thinking, well if somebody writes out, 'I hereby amend my trust to disown so and so,' then signs it and dates it, then that ought to be allowed," that "you ought to at least say I'm hereby amending my trust" (internal quotation mark omitted), and that "if I'm going to go to formalities of creating a trust, I ought to go to those same formalities in amending a trust." But, Michigan law is clear in this regard: "It is a well-established rule of statutory construction that this Court will not read words into a statute." *Byker v Mannes*, 465 Mich 637, 646-647; 641 NW2d 210 (2002). MCL 700.7602(3)(a) does not impose any type of language or formality requirement. Instead, it expressly imposes a relaxed standard—"substantially complying with a method provided in the terms of the trust." If we were to require Leon, the decedent, to use specific and formal language to amend his trust prior to his death, we would be doing so in direct contradiction to the language he chose in his trust, the language the Legislature chose in MCL 700.7602(3)(a), and existing caselaw. We decline to do so.

Accordingly, we reverse the trial court's order denying appellant's motion to confirm amendment to trust and remand this matter for the entry of an order granting the same.

Reversed and remanded. Appellant, as the prevailing party, may tax costs pursuant to MCR 7.219.

/s/ Kurtis T. Wilder
/s/ Mark T. Boonstra
/s/ Colleen A. O'Brien