## *In re* STILLWELL TRUST

Docket No. 307822. Submitted November 15, 2012, at Lansing. Decided November 29, 2012. Approved for publication January 24, 2013, at 9:05 a.m. Leave to appeal denied, 494 Mich 868.

Gwendoline L. Stillwell executed a revocable trust on July 16, 2001, and conveyed all her property, except joint accounts, to the trust. The trust provided that, upon Stillwell's death, her children and grandchildren (including future born or adopted grandchildren) were to be the beneficiaries. The trust contained specific provisions regarding the distribution of real property and stated that the distribution would be conducted pursuant to a written list that would be prepared and signed by Stillwell, the initial trustee of the trust. Before Stillwell died in May 2010, she instructed one of her grandsons to take an envelope to David N. McPhail, the husband of one of Stillwell's daughters, Mary McPhail, if something happened to Stillwell. The envelope stated that inside was a summary of Stillwell's estate and instructions. Following Stillwell's death, David N. McPhail, as the successor trustee of Stillwell's trust, petitioned the Clinton County Probate Court to construe the trust in light of the notes in the envelope from Stillwell. The notes, which were in Stillwell's handwriting and were dated but were unsigned, included lists and descriptions of personal property. The notes also contained several entries that were inconsistent with the terms of the trust, including that David N. McPhail was to share in the distribution of the personal property and that the college tuition of two of Stillwell's grandchildren, Jacob and Dessa McPhail, was to be paid from the estate before any of the estate was distributed to the beneficiaries. Petitioner David N. McPhail also sought a determination that Avery McPhail, the daughter of Dessa, was a grandchild-beneficiary of the trust because David N. McPhail and Mary McPhail had adopted Avery six days after Stillwell's death. The court, Lisa Sullivan, J., entered an opinion and order holding that Stillwell's handwritten notes constituted both a valid amendment of the trust and a list governing the disposition of Stillwell's personal property. The holdings included that David N. McPhail was to share in the distribution of the personal property and that the student loans

of Jacob and Dessa were to be paid before the remainder was paid to the beneficiaries. Finally, the court held that Avery was a "grandchild" beneficiary with regards to the trust. Respondents, Christine Ann Dudley-Marling (Stillwell's other daughter) and her two children, Ian Dudley-Marling and Anne Dudley-Marling, appealed.

The Court of Appeals *held*:

1. A settlor may amend a written revocable trust pursuant to MCL 700.7602(3)(a) by substantially complying with a method provided in the terms of the trust. The paragraph of the trust in this case governing amendment provided that the grantor could by written instrument delivered to the trustee modify or alter the agreement in any manner. This paragraph did not require the grantor to sign the instrument. Although the notes were unsigned and not entitled an "amendment," Stillwell clearly intended the notes to create a list governing the distribution of her personal property and intended to amend the trust. Stillwell clearly showed her intent that the contents of the notes be her final directive on the distribution of her entire estate. Stillwell modified how all her assets would be distributed by substantially complying with the terms of the trust that governed its amendment. She altered the disposition of the trust assets by providing that the tuition of Jacob and Dessa be paid before any other distributions, and she altered the disposition of the personal property by including David N. McPhail in the distribution. The probate court properly held that the notes constituted an amendment of the trust to the extent that the tuition of Jacob and Dessa should be paid first and David N. McPhail should participate in the distribution of the personal property. That part of the order of the probate court was affirmed.

2. The language of the trust showed that Stillwell created a class gift to her grandchildren and intended that her estate vest and the class of grandchildren-beneficiaries close at her death. Absent a clear indication to the contrary, membership in a class is generally to be ascertained at the death of the testator. Although the trust defined "grandchild" to include future born or adopted grandchildren, that definition did not change the fact that the class closed at Stillwell's death. The estate vested and the class of beneficiaries closed at Stillwell's death. Avery was not Stillwell's grandchild at the time of her death. The part of the order of the probate court identifying Avery as a grandchild entitled to a share of the estate was reversed.

Affirmed in part and reversed in part.

TRUSTS — AMENDMENTS OF TRUSTS — ESTATES AND PROTECTED INDIVIDUALS
  CODE.

  The Estates and Protected Individuals Code, MCL 700.1101 *et seq.*,
  governs the application of a trust in Michigan; section 7602(3)(a)
  of the code provides that a settlor may amend a written revocable
  trust agreement by substantially complying with a method pro-
  vided in the terms of the trust (MCL 700.7602[3][a]).

*Fortino Plaxton & Costanzo, P.C.* (by *Charles M. Fortino*), for petitioner.

*Schram, Behan & Behan* (by *Michael R. Behan*) for respondents.

Before: BORRELLO, P.J., and FITZGERALD and OWENS, JJ.

PER CURIAM. Respondents-appellants, Christine Ann Dudley-Marling, Ian Dudley-Marling, and Anne Dudley-Marling, appeal as of right a December 5, 2011, probate court order wherein the court held that certain handwritten notes constituted both a valid amendment of the Gwendoline Louise Stillwell Trust (the trust) and a list governing the disposition of the settlor's personal property and that Avery McPhail was a grandchild-beneficiary with regard to the trust. For the reasons set forth in this opinion, we affirm the probate court's order in part and reverse the order in part.

I. FACTS AND PROCEDURAL HISTORY

During her lifetime, the settlor, Gwendoline Stillwell, had two children, Mary McPhail and Christine Dudley-Marling. Mary married petitioner-appellee, David N. McPhail, who is the successor trustee of the trust. Together, Mary and petitioner had three children (David Maxwell McPhail, Jacob McPhail, and Dessa McPhail), and they have one grandchild, Avery McPhail

(the daughter of Dessa). Christine had two children, Ian Dudley-Marling and Anne Dudley-Marling.

On July 16, 2001, Stillwell executed the trust, a revocable trust, designating herself as the initial trustee. Stillwell conveyed all her property, excluding joint accounts, to the trust. The trust provided that, upon Stillwell's death, "my children and grandchildren (including future born or adopted grandchildren) are the beneficiaries of this Trust." The trust contained specific provisions regarding the distribution of real property, and it provided for the distribution of personal property pursuant to a written list that would be prepared and signed by Stillwell. The trust provided that any remaining property would be distributed in equal shares to the beneficiaries. Finally, the trust contained a clause that provided: "The Grantor may by instrument in writing delivered to the Trustee . . . modify or alter this Agreement in any manner . . . ."

Stillwell died in May 2010. Sometime before her death, Stillwell had instructed her grandson Jacob, who was age 27 at the time, that he was to take a large envelope to petitioner if anything ever happened to her. The envelope was addressed to petitioner and stated: "In the event of my death or if I happen to become incapacitated so that living alone is futile, open this envelop [sic]. There in [sic] lies a summary of my estate and instructions." The envelope contained several pages of handwritten notes in sequential order with the most recent document on top. The notes were unsigned, but were dated. Many of the writings included lists and descriptions of personal property; however, Stillwell had made several entries that were inconsistent with the terms of the trust. Specifically, Stillwell instructed that peti-

tioner was to share in the distribution of her personal property and that both Jacob's and Dessa's college tuition was to be paid from the estate before the estate was distributed to the beneficiaries.

On August 17, 2011, petitioner, as successor trustee, petitioned in the probate court to construe the trust in light of Stillwell's notes and determine the effect the notes had on the disposition of the assets in the trust. In addition, at a hearing, petitioner indicated that he and Mary had adopted Avery (the daughter of Dessa) six days after Stillwell's death. Petitioner argued that the adoption made Avery one of Stillwell's grandchildren, entitling her to a share of the estate. Respondents objected, arguing that the notes had no effect on the distribution of the estate because they were unsigned and did not refer to the trust or contain the word "amendment." Respondents also argued that Avery was not a beneficiary of the trust because she had not been a member of the grandchildren class of beneficiaries at the time of Stillwell's death.

Following an evidentiary hearing, the probate court entered an opinion and order on December 5, 2011, wherein it held that the handwritten notes constituted both a valid amendment of the trust and a list governing the disposition of Stillwell's personal property. The court concluded that, pursuant to the handwritten notes, petitioner was to share in the distribution of the personal property and that Jacob's and Dessa's student loans (approximately $76,244) were to be paid in full from the trust assets before the remainder was distributed to the beneficiaries. Finally, the probate court concluded that Avery was a beneficiary of the trust because the fourth paragraph of the trust provided that "grandchildren" beneficiaries included "future born or adopted grandchildren . . . ." This appeal ensued.

II. ANALYSIS

Respondents raise two issues on appeal. Respondents contend that the handwritten notes did not have any lawful effect on the distribution of the trust assets because they were unsigned and did not contain the word "amendment." Respondents also contend that the probate court erred by holding that Avery was a beneficiary of the trust.

We review de novo a probate court's construction and interpretation of the language used in a will or a trust. *In re Reisman Estate*, 266 Mich App 522, 526; 702 NW2d 658 (2005). When construing a trust, "a court's sole objective is to ascertain and give effect to the intent of the settlor." *In re Kostin Estate*, 278 Mich App 47, 53; 748 NW2d 583 (2008). Absent ambiguity, the words of the trust document itself are the most indicative of the meaning and operation of the trust. *Id.* A probate court's factual findings are reviewed for clear error. *In re Raymond Estate*, 483 Mich 48, 52-53; 764 NW2d 1 (2009).

With respect to the amendment of a trust, the Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq.*, governs the application of a trust in Michigan. *In re Temple Marital Trust*, 278 Mich App 122, 127-128; 748 NW2d 265 (2008). MCL 700.7602(3)(a) provides that a settlor may amend a written revocable trust agreement "[b]y substantially complying with a method provided in the terms of the trust."

In this case, the ninth paragraph of the trust governed amendment and provided that "[t]he Grantor may by instrument in writing delivered to the Trustee . . . modify or alter this Agreement *in any manner* . . . ." (Emphasis added.) The paragraph did not require the grantor to sign the instrument. There is no

dispute that Stillwell had the mental capacity to amend the trust, and there is no evidence of undue influence. Further, there is no dispute that the notes are in Stillwell's handwriting. Essentially, at issue is whether the lack of a signature and the absence of the word "amendment" are fatal to Stillwell's attempt to alter the disposition of her estate. A review of the contested notes shows that although the notes were unsigned and were not entitled an "amendment," Stillwell nevertheless clearly intended to create a list governing the distribution of her personal property and intended to amend the trust.

Stillwell placed the notes inside a large envelope that had specific directions to petitioner, the successor trustee, regarding her entire estate, indicating that she intended the documents to constitute more than just a list concerning the distribution of her personal property. In particular, Stillwell referred to the notes as "a summary of my estate and instructions," and she summarized her entire estate on the outside of the envelope, including real property, gold, bank accounts, and stocks. In the notes, Stillwell again referred not only to personal property, but also to all her assets. Stillwell clearly showed her intent that the contents of the notes constituted her final directive on the distribution of her entire estate. For example, Stillwell directed how her real property should be distributed in the event that any of her heirs had lived with her and provided care. She directed the successor trustee to divide all her assets. In one entry, she stated: "Given my age, however, all property must be up to date. Some stipulations are in order." On April 17, 2010, Stillwell stated, "My latest directions are as follows" and then dictated how she wanted her assets to be divided. In addition, on October 4, 2009, she stated, "This is my latest directive to the family."

Moreover, Stillwell modified how her assets were to be distributed. In the trust, apart from specific instructions with respect to her real property, Stillwell directed that her assets be divided evenly among the beneficiaries. In contrast, Stillwell clearly indicated in the notes that Jacob's and Dessa's college tuition was to be paid before any other distribution of her assets. Specifically, on November 3, 2010, Stillwell made two written entries that read as follows:

> When the assets are assembled and before dividing begins pay all college debts for Jacob McPhail and Dessa McPhail.
>
> *  *  *
>
> Dessa McPhail and [Jacob] McPhail's college loans must be paid ahead of any divisions of the estate.

These entries clearly show that Stillwell intended to alter the disposition of the trust assets by providing that both Jacob's and Dessa's tuition would be paid before any other distribution.

Furthermore, Stillwell modified the distribution of her personal property. In the trust, Stillwell provided that her personal items were to be distributed to the beneficiaries. In the notes, Stillwell indicated that she wanted petitioner to also share in the distribution of her personal property. Specifically, on November 3, 2010, Stillwell wrote, "[G]ive all heirs and include David N. McPhail the opportunity to choose personal items" and "David N. McPhail is to be included in the divisions of personal items . . . ." Near the last entry, Stillwell included an asterisk in the margin and wrote, "[C]hange from previous." On October 4, 2009, Stillwell referred to her personal possessions and wrote, "I wish all the heirs to choose as they wish," and in the margin

on the same page she drew an arrow to that sentence and wrote, "Also include David N. McPhail as he was a wonderful soninlaw [sic]."

In sum, Stillwell substantially complied with the terms of the trust that governed an amendment when she drafted the handwritten notes and ensured that they were delivered to the successor trustee upon her incapacitation. MCL 700.7602(3)(a). Accordingly, the probate court properly held that the notes constituted an amendment of the trust to the extent that Jacob's and Dessa's tuition should be paid from the assets of the trust and that petitioner should participate in the distribution of personal property.

In addition, we conclude that the notes govern the disposition of Stillwell's personal property. The trust provided that Stillwell had either prepared or would prepare a signed, written list designating that certain personal property be given to certain persons. Although the handwritten notes were unsigned, aside from an amendment discussed above, the crux of the notes was to direct how to dispose of Stillwell's personal belongings. In the notes, Stillwell clearly showed her intent to distribute her personal property in accordance with her directives therein. Moreover, the requirement that the list be signed was to ensure the validity of the document; here, no one questioned the validity of the notes. It is undisputed that the notes were in Stillwell's handwriting, that Stillwell included the notes in an envelope with instructions to the successor trustee, and that Stillwell had the notes delivered to the successor trustee upon her incapacitation. In taking these steps, Stillwell clearly showed her intent that the notes constitute a final list governing the distribution of her personal property. Furthermore, Stillwell arguably satisfied the signature requirement because the notes were

in Stillwell's own handwriting and contained state-
ments by her about her health and well-being at the
time the notes were written. In sum, the probate court
did not err when it ordered petitioner to distribute the
personal property in accordance with the directives in
the handwritten notes.

Next, respondents contend that the probate court
erred by concluding that Avery was a beneficiary of the
trust. The fourth paragraph of the trust was entitled
"Provisions Applicable Upon Death of Grantor," and it
provided, in relevant part, as follows:

> A. <u>Beneficiaries upon Death of Grantor.</u>
>
> \* \* \*
>
> 2. I have only two children: ***Mary Denise McPhail***
> and ***Christine Ann Dudley-Marling***. I have five grand-
> children: ***David Maxwell McPhail, Jacob Preston***
> ***McPhail, Dessa Rose McPhail, Ann Dudley-Marling***,
> and ***Ian Dudley-Marling***.
>
> 3. It is my intent . . . that my children and grandchil-
> dren (including future born or adopted grandchildren) are
> the beneficiaries of this Trust. After my death if the
> Trustee makes any distributions . . . they shall be in equal
> portions, per capita, to all of my grandchildren and chil-
> dren.

Petitioner contends that Avery is a beneficiary of the
trust because she became Stillwell's "grandchild"
when, six days after Stillwell's death, petitioner and
Mary adopted Avery. Respondents counter that Avery
was not a class member at the time of Stillwell's death.

The language of the trust shows that Stillwell created
a class gift to her grandchildren. Absent a clear indica-
tion to the contrary, membership in a class is generally
to be ascertained at the death of the testator. *In re*
*Fitzpatrick Estate*, 159 Mich App 120, 128; 406 NW2d

483 (1987);[1] *Veeser v Stenglein*, 314 Mich 29, 35; 22 NW2d 59 (1946); *In re Churchill's Estate*, 230 Mich 148, 158-159; 203 NW 118 (1925); see also *In re Reisman Estate*, 266 Mich App at 527 (stating that the general rules of construction applicable to wills also apply to trusts).

The plain language of the trust shows that Stillwell intended her estate to vest and the class of grandchildren-beneficiaries to close at her death. In particular, the fourth paragraph of the trust is entitled "**Provisions Applicable *Upon Death of Grantor.*"** (Emphasis added.) The paragraph subsequently identifies beneficiaries of the trust in a clause that contains the header, "Beneficiaries *upon Death of Grantor.*" (Emphasis added.) Moreover, although the trust defined "grandchild" to include "future born or adopted grandchildren," that definition did not change the fact that the class closed at Stillwell's death. Instead, the definition was in place so that in the event Stillwell had additional grandchildren during her lifetime, they would also be included as beneficiaries with the other named grandchildren. In sum, Stillwell's estate vested and the class of beneficiaries closed at her death. Accordingly, given that Avery was not Stillwell's grandchild at that time, she was not a class member and is not entitled to a share of the estate; the probate court erred by concluding otherwise.

For the reasons set forth in this opinion, the probate court's order is affirmed in part and reversed in part. We do not retain jurisdiction. Both parties

---

[1] Although cases decided before November 1, 1990, are not binding precedent, MCR 7.215(J)(1), they nevertheless can be considered persuasive authority, *Auto-Owners Ins Co v Martin*, 284 Mich App 427, 444 n 4; 773 NW2d 29 (2009).

having presented valid arguments on appeal, neither party may tax costs. MCR 7.219(A).

BORRELLO, P.J., and FITZGERALD and OWENS, JJ., concurred.