*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
August 13, 2020

Plaintiff-Appellee,

v

No. 347599
Wayne Circuit Court
LC No. 18-006276-01-FC

MARIO ANDRETTI IRVIN,

Defendant-Appellant.

Before: FORT HOOD, P.J., and JANSEN and TUKEL, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of assault with the intent to commit murder, MCL 750.83, three counts of possession of a firearm during the commission of a felony (felony-firearm), second offense, MCL 750.227b, felon in possession of a firearm, MCL 750.224f, and felon in possession of ammunition, MCL 750.224f(6). Defendant was sentenced, as a third-offense habitual offender, MCL 769.11, to 12 to 25 years' imprisonment for assault with intent to commit murder, five years' imprisonment for each count of felony-firearm, one to five years' imprisonment for felon in possession of a firearm, and one to five years' imprisonment for felon in possession of ammunition. This appeal is being decided without oral argument pursuant to MCR 7.214(E)(1). We affirm.

## I. FACTUAL BACKGROUND

On the night of June 30, 2018, defendant, Theodis Massey, Gerald Parris, and Treasure Jackson were all spending the night at Massey's home. Parris arrived at the house between 1:00 a.m. and 2:30 a.m. and got into a verbal argument with Jackson, his girlfriend at the time, in the upstairs bedroom. After Parris and Jackson argued for a few minutes, defendant walked up the stairs and shot Parris multiple times in the back and stomach. Parris used a mattress to stop defendant from continuing to shoot and ran out of the house in search of help. Parris ultimately was transferred to the hospital and was in a coma for five days, but survived his injuries.

-1-

## II. JURY SELECTION

Defendant first argues that the trial court abused its discretion by limiting voir dire to 15 minutes for each side. Defendant argues that the time limitation was unreasonable and unfairly prejudicial because defense counsel was unable to intelligently exercise his peremptory challenges in order to select an impartial and unbiased jury. We disagree.

To preserve an issue of jury selection for appeal, a party must either exhaust all of its peremptory challenges or refuse to express satisfaction with the jury. *People v Taylor*, 195 Mich App 57, 59-60; 489 NW2d 99 (1992). Defendant neither exhausted his peremptory challenges nor expressed dissatisfaction with the empaneled jury. Thus, the issue is unpreserved.

When preserved, jury selection issues are reviewed for an abuse of discretion. *People v Tyburski*, 445 Mich 606, 619; 518 NW2d 441 (1994); MCR 6.412(C)(1). Unpreserved issues, however, are reviewed for plain error. *People v Cain*, 498 Mich 108, 116; 869 NW2d 829 (2015).

> To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice. Finally, once a defendant satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence. [*People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999) (quotation marks, citations, and brackets omitted).]

"A 'clear or obvious' error under the second prong is one that is not 'subject to reasonable dispute.' " *People v Randolph*, 502 Mich 1, 10; 917 NW2d 249 (2018).

"A defendant who chooses a jury trial has an absolute right to a fair and impartial jury." *Tyburski*, 445 Mich at 618. "The function of voir dire is to elicit sufficient information from prospective jurors to enable the trial court and counsel to determine who should be disqualified from service on the basis of an inability to render decisions impartially." *People v Sawyer*, 215 Mich App 183, 186; 545 NW2d 6 (1996). "The trial court has discretion in both the scope and conduct of voir dire." *People v Washington*, 468 Mich 667, 674; 664 NW2d 203 (2003) (citation and quotation marks omitted); MCR 6.412(C)(1). While there are no "hard and fast rules," as to what constitutes acceptable and unacceptable voir dire practice, *Tyburski*, 445 Mich at 623, voir dire "should be conducted for the purposes of discovering grounds for challenges for cause and of gaining knowledge to facilitate an intelligent exercise of peremptory challenges," MCR 6.412(C)(1). A trial court should not limit voir dire such that it restricts a party's intelligent assessment of bias. *Tyburski*, 445 Mich at 623. Additionally, trial judges must be allowed "wide discretion in the *manner* they employ to achieve the goal of an impartial jury." *Id*. at 623.

The record shows that, before voir dire commenced, the trial court informed the attorneys that they would each be afforded 15 minutes to question the jurors. The trial court reasoned that there was nothing "unusually complex about this case" that would require more than 30 minutes of voir dire. The trial court stated that the parties could obtain the jurors' biographical information from the juror information sheets and advised the parties to address any issues that raised potential juror bias.

Throughout jury selection, the prosecutor questioned the jurors about whether they, their family, or friends had been the victim of a crime; how the justice system treated those jurors, their family, or friends who had been involved in the justice system before; and whether the jurors would hold any prior bad experience that they, their friends, or family had with the justice system against the prosecutor. The prosecutor asked whether the jurors could make their decisions on the basis of the evidence presented; whether the jurors recognized that merely because people have different perceptions, they are not lying; what the phrase "actions speak louder than words" meant to them; and whether they could presume one's intent from his or her actions. The prosecutor also asked the jurors whether they would find defendant guilty if the prosecutor proved all of the elements of the crime even if the jurors did not understand the defendant's motive. Whenever any of the jurors answered affirmatively, the prosecutor followed up with that juror regarding the circumstances of his or her answer and whether the juror's experience would interfere with his or her ability to be fair and impartial in this case.

Defense counsel questioned the jurors regarding prior jury duty experiences and whether they had any family or friends who are lawyers or law enforcement personnel and, if so, whether those individuals discussed their work with the jurors. Defense counsel also asked the jurors whether they had children and, if so, whether incidents ever occurred where one of the jurors was in one room and heard a "ruckus" occurring in another room and, if so, about each of their reactions. Defense counsel additionally asked the jurors what each of them believed defendant had to prove; whether any of them felt that defendant must be guilty if defendant did not testify; what each believed circumstantial evidence to be; and whether there was anything else that would inhibit any of them in being a fair and impartial juror.

In total, neither the prosecutor nor defense counsel exercised any challenges for cause. The prosecutor exercised seven peremptory challenges, and, contrary to the prosecution's assertion on appeal that defendant exercised all 12 peremptory challenges, defense counsel only exercised 11 peremptory challenges. After new jurors were impaneled, the trial judge questioned the jurors, asking whether, on the basis of the issues raised by the attorneys, any of them had reason to believe that he or she could not serve as a fair and impartial juror; about each of their prior jury duty experiences; and whether any of them, their family, or their friends had ever been accused, convicted, or were the victim of a crime. The trial judge also asked the jurors what would they find if they had to decide defendant's guilt before the trial occurred; whether they would hold defendant's decision not to testify against him; whether the jurors would decide the case on the evidence presented; whether the jurors agreed to follow the law as the judge instructed; whether the jurors understood that police officers are human beings who make mistakes, are capable of telling lies, and whose testimony should not be treated any differently than any other witness's testimony; and whether there was anything else that would inhibit the a juror's ability to be fair and impartial. The trial judge also excused one juror whose first language was not English.

On the basis of this record, the trial court did not abuse its discretion by limiting voir dire to 15 minutes per side. The trial court's time limit was just that, a time limit; it did not in any restrict the subject matter that the attorneys were permitted to address during voir dire. Defense counsel had the opportunity to ask probing questions, did so, and concluded voir dire with about three minutes to spare. The trial judge encouraged the attorneys to get "to the heart of the matter" and the issues to be raised during trial. Accordingly, defense counsel had a sufficient opportunity to question the jurors about their beliefs regarding firearms and the use of force.

Moreover, despite the trial court's directive that each party would only be provided 15 minutes for voir dire, the trial judge paused the attorneys' "15-minute timer" three times to allow the attorneys to delve into a more detailed line of questioning without counting against their time. In total, voir dire lasted one hour and 10 minutes, defense counsel exercised 11 of 12 peremptory challenges, and ended voir dire with about three minutes to spare. The length of voir dire here was properly within the trial court's discretion regarding the scope and conduct of voir dire. The trial court's time limitation did not restrict the manner in which the parties developed a factual basis to exercise their peremptory challenges. Furthermore, defendant has not made any showing that he was prejudiced by the trial court's decision to limit the amount of time defendant could ask questions to potential jurors. And defendant certainly has not presented any evidence to overcome the presumption that the jurors in his case were competent and impartial. See *People v Johnson*, 245 Mich App 243, 256; 631 NW2d 1 (2001) ("Jurors are presumptively competent and impartial, and the party alleging the disqualification bears the burden of proving its existence.").

Defendant also argues that requiring a defendant to unintelligently exercise peremptory challenges on the basis of inadequate questioning would be pointless for the purposes of voir dire. See *Taylor*, 195 Mich App at 60 (holding that the defendant was not required to exhaust her peremptory challenges to raise a challenge to the trial court's voir dire because requiring the defendant to unintelligently exercise her peremptory challenges would be "pointless.") But the trial court's time limit on voir dire did not prevent the development of a sufficient factual basis for the intelligent exercise of peremptory challenges. Rather, voir dire was sufficiently probing to allow the parties to discover grounds for challenges and to intelligently exercise their challenges.

Finally, defendant further argues that the trial court's time limit on voir dire cannot be deemed harmless because it is impossible to know whether any of the seated jurors had preconceived beliefs regarding the use of force. But "[j]urors are presumptively competent and impartial, and the party alleging the disqualification bears the burden of proving its existence." *Johnson*, 245 Mich App at 256. Defendant does not assert that any particular juror harbored a bias regarding the use of force and merely speculates that a juror may have had preconceived beliefs regarding the use of force. As such, defendant does not even allege, let alone demonstrate, the requisite level of prejudice. Thus, defendant's right to select an impartial and unbiased jury was not denied by the trial court's time limit on voir dire.

### III. UNRESPONSIVE TESTIMONY

Defendant argues that he was denied the right to a fair trial because Detroit Police Officer James DuBois made two unsolicited comments at trial regarding what defendant's custodial status had been at a time when Officer DuBois had questioned defendant. We disagree.

To preserve an issue regarding a trial court's evidentiary ruling, a defendant must raise that particular issue in the trial court and raise the same basis for objection on appeal. *People v Gaines*, 306 Mich App 289, 306; 856 NW2d 222 (2014). Defendant admits that he failed to object at trial to Officer DuBois's two statements that made reference to defendant's custodial status at a different time. Thus, the issue is unpreserved. See *id.* As noted earlier, unpreserved issues are reviewed for plain error. *Cain*, 498 Mich at 116.

As a general rule, "an unresponsive, volunteered answer to a proper question is not grounds for the granting of a mistrial." *People v Haywood*, 209 Mich App 217, 228; 530 NW2d 497 (1995). An unresponsive answer is one that provides information not requested. *People v Mahone*, 294 Mich App 208, 213; 816 NW2d 436 (2011). An unresponsive answer is only deemed prejudicial error if the unresponsive answer is egregious or cannot be amended with a curative instruction. *Id*.

Officer DuBois first referred to defendant's earlier custodial status when the prosecutor was laying a foundation to admit an interrogation video into evidence:

> *The Prosecutor*: Now, Officer, earlier today did you view a video that was People's Proposed Exhibit Number 14?
>
> *Officer DuBois*: Yes.
>
> *The Prosecutor*: And what was that video?
>
> *Officer DuBois*: It's my video with [defendant] at the Wayne County Jail.

The second reference occurred when the prosecutor was laying a foundation to admit defendant's written statement into evidence:

> *The Prosecutor*: If you could flip through that exhibit; is there anything else attached there?
>
> *Officer DuBois*: Yeah, interrogation record which essentially do [sic] a background on him, a description of him physically, his signatures on here, education, knowledge, [and] understanding of the interview.
>
> *The Prosecutor*: Is there also a written statement that's attached to that?
>
> *Officer DuBois*: Yes. It's the written statement I took from him when I was at the Wayne County Jail.

In both instances, Officer DuBois's references to the Wayne County Jail were unresponsive in that they provided some information which had not been requested. But the testimony was not egregious or outcome-determinative, and can fairly be construed as providing fuller and more accurate information. Defendant relies on *People v Page*, 41 Mich App 99, 101-102; 199 NW2d 669 (1972), and *People v Holly*, 129 Mich App 405, 415-416; 341 NW2d 823 (1983), to establish that law enforcement witnesses are generally held to a higher standard with regard to unresponsive testimony. As cases decided by this Court before November 1, 1990, *Page* and *Holly* are not binding precedent. MCR 7.215(J)(1); *In re Stillwell Trust*, 299 Mich App 289, 299 n 1; 829 NW2d

353 (2012). Nevertheless, as cases with persuasive authority we choose to address them because defendant specifically relied on them in his brief on appeal. In *Page*, this Court reversed the defendant's conviction of armed robbery because there was little evidence supporting his conviction other than the police witness's unresponsive remark that the defendant was arrested in front of a "dope den." *Page*, 41 Mich App at 101-102. Conversely, in *Holly*, this Court affirmed the defendant's armed robbery conviction because there was overwhelming evidence to support the defendant's conviction despite a police witness's unresponsive testimony that the defendant admitted his involvement in other armed robberies. *Holly*, 129 Mich App at 414-417.

As noted by the prosecution, *Page* and *Holly* are distinguishable from this case because they involve a police officer's unsolicited commentary regarding the defendant's other criminal activity that the jury otherwise would not have known. In this case, however, Officer DuBois's testimony did not relate to uncharged conduct or refer to information that the jury did not otherwise know. Defendant was in custody because of the charged offenses, and the fact that a defendant on trial in a criminal case was in jail would hardly be surprising to the jury. Furthermore, after Officer DuBois's first unresponsive reference, the jury watched the interrogation video and saw that defendant was in custody. Additionally, defense counsel could have objected to the reference, but did not.

Defendant bears the burden of showing actual prejudice. *Carines*, 460 Mich 750, 763. We conclude that overwhelming evidence was presented to support defendant's convictions regardless of Officer DuBois's unresponsive remarks. The jury heard from three witnesses that defendant shot Parris: Jackson, Massey, and Parris. Additionally, the jurors were instructed that the testimony of a police officer was to be evaluated by the same standards used to evaluate the testimony of any other witness. Accordingly, defendant failed to demonstrate actual prejudice as the result of Officer DuBois's unresponsive statement.

## IV.  CONCLUSION

For the reasons stated in this opinion, defendant's convictions are affirmed.

/s/ Karen M. Fort Hood
/s/ Kathleen Jansen
/s/ Jonathan Tukel