*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

POWER WELLNESS MANAGEMENT, LLC,

        Petitioner-Appellee,

and

CHELSEA HEALTH & WELLNESS
FOUNDATION, doing business as 5 HEALTHY
TOWNS FOUNDATION,

        Intervenor-Appellee,

v

CITY OF DEXTER,

        Respondent-Appellant.

UNPUBLISHED
March 4, 2021

No. 352226
Tax Tribunal
LC No. 18-001383-TT

Before: SWARTZLE, P.J., and RONAYNE KRAUSE and RICK, JJ.

PER CURIAM.

Respondent, City of Dexter, appeals as of right the Michigan Tax Tribunal's order granting summary disposition under MCR 2.116(C)(10) in favor of petitioner, Power Wellness Management, LLC (the management company), and intervenor, Chelsea Health and Wellness Foundation (the foundation).[1]  Respondent asserts that the lessee-user tax imposed by MCL

---

[1] This case is part of an ongoing dispute between the parties involving the City of Dexter's (and previously Scio Township's) efforts to assess tax on the subject property.  This dispute has been before this Court on two previous occasions. See *Chelsea Health & Wellness Foundation v Scio Twp*, unpublished per curiam opinion of the Court of Appeals, issued October 12, 2017 (Docket No. 332483), and *Dexter v Chelsea Health & Wellness Foundation and Power Wellness*

-1-

211.181(1) should apply to the management company because it operates an otherwise tax-exempt fitness center under a management agreement with the foundation. The tax tribunal ruled that the lessee-user tax was inapplicable. We affirm.

## I. PERTINENT FACTS

The subject property, the Dexter Wellness Center (the center) is owned by the foundation and is used as a fitness center. A panel of this Court previously determined that the center was exempt from ad valorem property tax[2] under MCL 211.7o. *Chelsea Health & Wellness Foundation v Scio Twp*, unpublished per curiam opinion of the Court of Appeals, issued October 12, 2017 (Docket No. 332483). The foundation hired the management company to manage the operations of the fitness center. The management company is in the business of operating fitness centers, providing this service to 28 locations, 90 to 95% of which are owned by nonprofit entities like the foundation. The relationship between the foundation and the management company is governed by a Management Agreement. The Management Agreement provides that the management company operates essentially all aspects of the fitness center in exchange for a fee. The management company cannot profit from any revenue generated by the center and is not exposed to any potential losses. Although a portion of the management company's fee is subject to reduction if it fails to meet certain performance standards, the fee can never exceed the agreed-upon amount. The foundation also reimburses the management company for all costs incurred in the operation of the center. The Management Agreement does not provide for any payment of rent, money, or other consideration by the management company to the foundation. The foundation retains oversight of all the management company's activities, has access to the fitness center at all times, and can terminate the Management Agreement at any time.

Respondent assessed the lessee-user tax under MCL 211.181(1) to the management company for 2018, asserting that it used the fitness center for its business purposes. Petitioners appealed to the tax tribunal. The tax tribunal granted petitioners' motion for summary disposition under MCR 2.116(C)(10), finding that no issue of material fact existed and concluding that the management company was not subject to the lessee-user tax. On appeal, respondent argues that the tax tribunal erred by granting summary disposition to petitioners because the foundation has made the center available to the management company to use in connection for a business conducted for profit, an arrangement that should create liability under the lessee-user tax, MCL 211.181(1). We disagree.

## II. STANDARD OF REVIEW

This Court's review of tax tribunal decisions "is limited to deciding if the tribunal's factual findings are supported by competent, material, and substantial evidence." *Kalamazoo v Richland Twp*, 221 Mich App 531, 535; 562 NW2d 237 (1997). "Substantial evidence is any evidence that

*Management LLC*, unpublished per curiam opinion of the Court of Appeals, issued December 29, 2018 (Docket No. 342364).

[2] "Ad valorem" means "proportional to the value of the thing taxed." *Black's Law Dictionary* (11th Ed).

reasonable minds would accept as adequate to support the decision; it is more than a mere scintilla of evidence but may be less than a preponderance of the evidence." *Barak v Oakland Co Drain Comm'r*, 246 Mich App 591, 597; 633 NW2d 489 (2001) (quotation marks and citation omitted). "In the absence of fraud, this Court reviews the [tax tribunal's] decisions to determine whether the tribunal erred in applying the law or adopted the wrong principle." *Kalamazoo*, 221 Mich App at 535. Summary disposition is permitted under MCR 2.116(C)(10) when, "except as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." *Radtke v Everett*, 442 Mich 368, 374; 501 NW2d 155 (1993) (brackets omitted). "A court reviewing such a motion must consider the pleadings, affidavits, depositions, admissions, and any other evidence in favor of the party opposing the motion, and grant the benefit of any reasonable doubt to the opposing party." *Kalamazoo*, 221 Mich App at 536. "This Court is liberal in finding genuine issues of material fact." *Jimkoski v Shupe*, 282 Mich App 1, 5; 763 NW2d 1 (2008).

## III. ANALYSIS

The lessee-user tax imposed by MCL 211.181(1) is assessed in lieu of the general ad valorem property tax provided for under the General Property Tax Act. *Nomads, Inc v Romulus*, 154 Mich App 46, 52; 397 NW2d 210 (1986)[3]; see also MCL 211.1 *et seq*. As indicated, a panel of this Court previously held that the property at issue was not subject to ad valorem property tax.[4] As a result, the taxing authority sought to impose the lessee-user tax. The lessee-user tax is not an ad valorem tax on realty, but instead is a specific or excise tax[5] on the lessee or user. *Nomads, Inc*, 154 Mich App at 53. "It is intended to ensure that lessees of tax-exempt property will not receive an unfair advantage over lessees of privately[-]owned property." *Id*. (quotation marks and citation omitted). MCL 211.181(1) provides:

> Except as provided in this section, if real property exempt for any reason from ad valorem property taxation is leased, loaned, or *otherwise made available to* and *used by* a private individual, association, or corporation *in connection with a business conducted for profit*, the lessee or user of the real property is subject to taxation in the same amount and to the same extent as though the lessee or user owned the real property. [Emphasis added.]

This Court has had several previous occasions to address the interpretation and application of MCL 211.181. In *Nomads, Inc*, 154 Mich App at 49, the petitioner operated a travel club, which

---

[3] This case was decided before November 1, 1990, and, therefore, it is "not binding precedent, MCR 7.215(J)(1), [but it] can be considered persuasive authority," *In re Stillwell Trust*, 299 Mich App 289, 299 n 1; 829 NW2d 353 (2012).

[4] See *Chelsea Health & Wellness Foundation*, unpub op, p 18.

[5] An excise tax is "[a] tax imposed on the manufacture, sale, or use of goods (such as a cigarette tax), or on an occupation or activity (such as a license tax or an attorney occupation fee)." *Black's Law Dictionary* (11th ed). A specific tax is "[a] tax imposed as a fixed sum on each article or item of property of a given class or kind without regard to its value." *Black's Law Dictionary* (11th ed).

was organized as a nonprofit corporation under state law, and was granted tax-exempt status by the Internal Revenue Service. The travel club leased land from the Wayne County Road Commission and constructed an aircraft hangar, an office, and maintenance facilities on this land. *Id*. The travel club owned and operated an airplane for use by club members. *Id*. at 50. The respondent assessed the lessee-user tax under MCL 211.181. *Id*. The tax tribunal upheld respondent's assessment, reasoning:

> Petitioner (the club) does not take a profit, but that is because it is a cooperative operation [sic] whereby the savings inure to the direct benefit of Petitioner's members. This is, in our opinion, a form of profit which the members individually enjoy by virtue of the operation of our business. [*Id*. at 54 (alteration in original; quotation marks omitted).]

We reversed the tax tribunal's decision, determining that the rules of statutory construction required the phrase "business conducted for profit" to be construed narrowly. *Id*. at 54-55. Regarding the phrase "business conducted for profit," we observed the following:

> The qualifying language is not an exemption; rather it defines the taxpayers on whom the lessee-user tax is imposed, i.e. lessees of tax-exempt property used in connection with business conducted for profit. . . . [T]he pertinent language set forth in subsection (1), i.e., "business conducted for profit," must be strictly construed in favor of the petitioner taxpayer. We conclude that the Tax Tribunal erred in giving the language in question a broad interpretation. We therefore conclude, resolving the uncertainty in the language in favor of petitioner, that petitioner is not subject to the lessee-user tax. [*Id*. at 55.]

This statutory language was also at issue in *Kalamazoo*, 221 Mich App at 532. In *Kalamazoo*, the petitioner formed an entity, the Kalamazoo Municipal Golf Association (KMGA), to operate and maintain a golf course on land that was owned by the City of Kalamazoo, but situated in Richland Township. *Id*. The land was exempt from taxation under MCL 211.7m. *Id*. at 533. Richland Township assessed a tax liability to KMGA under the lessee-user statute, MCL 211.181(1). *Id*. The Richland Township Board of Review determined that the management agreement between KMGA and the City of Kalamazoo—which provided that KMGA and its employees were independent from the City of Kalamazoo and indemnified the city for claims made involving the golf course—subjected KMGA to taxation under the lessee-user statute. *Id*. The tax tribunal agreed that KMGA was a private association operating the golf course for profit and held that the lessee-user tax applied. *Id*. at 533-534. On appeal, we determined that the tax tribunal erred as a matter of law when it found that the golf course was used in connection with a "business conducted for profit." *Id*. at 536-537.[6] We concluded that the terms of the agreements were not inconsistent with KMGA's nonprofit status. *Id*. at 537. Accordingly, the tax tribunal's finding

---

[6] Although we concluded that the tax tribunal incorrectly found that the property was being used in connection for a business purpose, we ultimately affirmed the tax tribunal's decision because it reached the correct result, that KMGA was exempt from taxation, for the wrong reason. *Kalamazoo*, 221 Mich App at 537-538.

"that the KMGA operated a for-profit business was not supported by competent, material, and substantial evidence." *Id*. We reasoned:

> [T]he agreements required the KMGA to provide to the general public open golf, league, and tournaments at reasonable times, to operate food and golf-equipment concessions, and to maintain the golf course to a specified standard. In addition, . . . the agreements provided Kalamazoo with extensive oversight of the KMGA's operation of Eastern Hills. . . .
>
> [T]he obligations of the KMGA were reasonably related to public purposes. The broader purpose of the lessee-user tax is to eliminate the unfair advantage that private-sector users of tax-exempt property would otherwise wield over their competitors leasing privately owned property. [*Id*. at 539.]

Importantly, in *Kalamazoo*, the city did not merely privatize the operation of the golf course. *Id*. Rather, it maintained an agreement with KMGA that retained substantial oversight over the operations, with the purpose of ensuring that affordable golf services were made available to the general public. *Id*. Therefore, we held that KMGA was not operating a "business conducted for profit." *Id*.

In the instant case, the tax tribunal's finding that the fitness center was not leased, loaned to, or made available to the management company and used in connection with a for-profit business is supported by substantial, material, and competent evidence. The foundation retained final control of the operation of the fitness center and the management company acted only as the foundation's agent. The management company was paid a fee for its services. Although the fee could have been reduced if it failed to meet certain performance benchmarks, it was not possible for the management company to participate in any revenue or profit sharing. Likewise, the management company did not have any exposure to losses. Despite the comprehensive nature of the services that the management company provided, the boundaries of the Management Agreement made clear that the management company could not exercise autonomy over the operations of the fitness center. Further, despite respondent's claim to the contrary, the management company's access to the facility was not exclusive. The Management Agreement clearly stated that the foundation could access the facility at any time and the management company was required to obtain permission from the foundation to allow any outside groups to use the facility.

Given the facts of this case, there is no reason to believe that this arrangement implicated the purpose behind the lessee-user statute, i.e., preventing a for-profit enterprise from using exempt property to gain an unfair advantage over competitors. See *id*. In conclusion, the tax tribunal's finding that the fitness center was not leased, loaned to, or made available to the management company and used in connection with a for-profit business was supported by substantial, material, and competent evidence. Therefore, the tax tribunal did not err by determining that the lessee-user tax imposed by MCL 211.181(1) was not applicable or by granting petitioners' motion for summary disposition under MCR 2.116(C)(10).

Respondent also argues that the management agreement was in substance a lease of the facility. Because respondent failed to identify this issue in its statement of questions presented, it

is waived and we need not consider it. See MCR 7.212(C)(5); *Busch v Holmes*, 256 Mich App 4, 12; 662 NW2d 64 (2003). However, even if the issue were properly before this Court, it fails on the merits. Christopher Renius, the assessor for the City of Dexter, testified in his deposition that there was no lease between Power Wellness and Chelsea Health. There is no evidence that Power Wellness made any payments to Chelsea Health. The taxing authority has the burden of proving that a tax statute applies. *Kalamazoo*, 221 Mich App at 536-538. Consequently, in order to avoid summary disposition, respondent needed to present evidence indicating that there was a lease. *Radtke*, 442 Mich at 374. Because respondent did not present such evidence, it has failed to meet its burden of proof, so its argument that there was a lease fails to avoid summary disposition. Petitioner, being the prevailing party, may tax costs pursuant to MCR 7.219.

Affirmed.

/s/ Brock A. Swartzle
/s/ Amy Ronayne Krause
/s/ Michelle M. Rick