*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JILL P. MITCHELL,

     Plaintiff-Appellant,

v

BRYAN J. MITCHELL,

     Defendant-Appellee.

UNPUBLISHED
August 25, 2022

No. 356687
Marquette Circuit Court
LC No. 11-048682-DM

Before: RICK, P.J., and BOONSTRA and O'BRIEN, JJ.

PER CURIAM.

This case involving postjudgment actions to enforce an amended judgment of divorce returns to this Court after remand to the trial court for a correction or clarification of an order regarding collection of a money judgment.[1] In this appeal, plaintiff, Jill P. Mitchell, appeals as of right the trial court's order denying her motion for reconsideration or clarification of the court's order complying with this Court's remand. We affirm.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff and defendant, Bryan J. Mitchell, have an acrimonious and litigious relationship, which has led to years of postjudgment proceedings in the trial court and several appeals before this Court. In a previous appeal, *Mitchell v Mitchell*, unpublished per curiam opinion of the Court of Appeals, issued October 15, 2020 (Docket Nos. 346774 and 349209), a panel of this Court provided the following relevant summary of the trial court proceedings:

Plaintiff and defendant, in anticipation of their impending divorce, entered into a Voluntary Separation and Property Settlement Agreement ("the settlement agreement"), which, in pertinent part, addressed the marital property on Saux Head Lake Road in Marquette, Michigan ("the Saux Head property"). Despite

---

[1] *Mitchell v Mitchell*, unpublished per curiam opinion of the Court of Appeals, issued October 15, 2020 (Docket Nos. 346774 and 349209).

-1-

defendant's attempt to set aside the agreement, the trial court determined that it was a valid and binding contract, and adopted it into the amended judgment of divorce issued on April 10, 2012. The amended judgment of divorce provided that defendant was required to pay plaintiff $3,000 per month in spousal support, but that such support was modifiable. As to the Saux Head property, the amended judgment of divorce adopted the terms of the settlement agreement, which awarded the property to plaintiff, via her trust, but also required defendant to bear sole responsibility for the loans secured by the Saux Head property. The particular loan at issue in this case was from USAmeriBank (USAB), which, at the time of the divorce, had an outstanding balance of about $750,000 to $800,000. The amended judgment of divorce also included language from the settlement agreement requiring defendant to "hold the Plaintiff harmless, and defend and indemnify her" regarding the USAB loan.

Within a few months of entry of the amended judgment of divorce, plaintiff received notice that foreclosure proceedings were being initiated with regard to the Saux Head property because of defendant's failure to pay the loan. Plaintiff successfully obtained an order from the trial court requiring defendant to bring the loan current before the foreclosure sale occurred. When defendant still refused to pay, plaintiff moved the trial court to hold defendant in contempt of court and jail him until he paid. After determining that defendant did not have sufficient funds to pay the debt, and jailing him would stop him from earning money to pay child and spousal support, the trial court denied plaintiff's request to jail defendant. The trial court, in an October 2012 order, though, indicated that plaintiff could still obtain a money judgment against defendant should the Saux Head property be lost for foreclosure.

Later that month, USAB sold the Saux Head property via foreclosure by advertisement. Before the redemption period expired, plaintiff initiated litigation in Case No. 13-51332-NZ, before the same trial court, seeking to set aside the foreclosure sale, reasoning that the loan documents did not contain the power to foreclose by advertisement. Plaintiff's lawsuit against USAB also alleged that plaintiff's signature on the documents had been obtained via fraud, and thus, any claim by USAB should be dismissed. By June 2014, the trial court had granted plaintiff's motion to set aside the foreclosure sale, and USAB had asserted a counterclaim and third-party claim against plaintiff and her trust for a judicial foreclosure and for breach of the guaranties in the loan documents. The litigation in Case No. 13-51332-NZ culminated in a lengthy bench trial that was almost entirely related to plaintiff's claims of fraud. In September 2015, the trial court found that plaintiff had not proven her fraud claims, but that USAB was entitled to judicial foreclosure of the Saux Head property. A judgment of foreclosure against plaintiff and her trust was entered in November 2015, for $1,321,976.90, which consisted of $1,003,931.60 related to the principal of the loan and accrued interest and fees, $287,005.50 in USAB's attorney fees, and $31,039.81 in costs.

In light of that judgment, plaintiff moved the trial court in this case to order defendant to indemnify her and hold her harmless for her loss of the property and

her attorney fees as he was required to do under the amended judgment of divorce. Before responding to plaintiff's motion regarding the Saux Head property, defendant moved the trial court to reduce his spousal support, asserting that he had reduced income and that plaintiff had obtained a valuable legal settlement and her father's estate which increased her income. On February 5, 2016, the trial court entered an order reducing defendant's spousal support to $2,600 per month effective March 1, 2016. The order indicated that it was temporary and was subject to retroactive modification after an evidentiary hearing. The evidentiary hearing regarding both motions were repeatedly adjourned in 2016, once because of defendant's failure to respond to discovery, and another time because he was in the process of replacing counsel.

In October 2016, defendant finally responded to plaintiff's motion regarding the Saux Head property, largely arguing that he was not responsible for indemnifying plaintiff for litigation she initiated and that, because the Saux Head property was fully encumbered at the time of the divorce, plaintiff was not damaged by its loss. Defendant argued that the trial court's October 2012 order restricted plaintiff's damages in the event of foreclosure to moving fees and storage costs.

At a hearing before a referee on March 7, 2017, defendant voluntarily withdrew without prejudice his motion to reduce spousal support. Thus, the planned evidentiary hearing before a referee set to take place on March 13, 2017, would only be for plaintiff's claims regarding the Saux Head property. When that hearing took place, however, the referee found that it did not have enough time to consider the issues presented and ordered that the hearing be continued on another date. Plaintiff prepared a proposed order after that hearing, which did not mention the withdrawal of the spousal support motion, and did not order that the temporary order be rescinded. Thus, the temporary order that defendant pay $2,600 per month remained in place.

Also in March 2017, the judicial foreclosure sale of the Saux Head property occurred. The end result was a deficiency judgment entered against plaintiff and her trust in Case No. 13-51332-NZ for about $500,000.

The referee held the continued evidentiary hearing on June 5, 2017, during which it accepted documentary evidence and testimony from witnesses, including an appraiser who testified as to the value of the Saux Head property. In its findings and recommendation issued after the hearing, the referee determined that, because of the October 2012 order, it could not consider the replacement value of the Saux Head property or plaintiff's legal fees in Case No. 13-51332-NZ. Instead, the referee found that defendant owed plaintiff $15,000 for moving expenses, storage costs, and attorney fees in the present case. Plaintiff objected to those findings and requested a de novo hearing. At that hearing, the trial court indicated its disagreement with the referee about potential damages to plaintiff arising out of Case No. 13-51332-NZ and scheduled an evidentiary hearing on the issue.

In an order entered after the de novo hearing, the trial court held that it agreed with the referee that plaintiff could not obtain the value of the Saux Head property because she was aware that it was fully encumbered at the time of the divorce. The trial court's order also provided that plaintiff's and USAB's legal fees were only collectible under the indemnity and hold-harmless provisions of the amended judgment of divorce to the extent they related to the foreclosure. In other words, defendant was not required to indemnify plaintiff for prosecuting her fraud claims against USAB.

The first day of the trial court's evidentiary hearing took place in October 2017, during which plaintiff testified about her damages, and defendant presented expert witness testimony regarding reasonable attorney fees related to foreclosure litigation. The trial court scheduled a continued hearing date to complete the testimony of witnesses. Before that occurred, however, plaintiff's attorney, over her objection but with the trial court's permission, withdrew from the case. The trial court adjourned the hearing several times, ultimately providing plaintiff with about 10 months to obtain replacement counsel. When the final day of the evidentiary hearing arrived in September 2018, plaintiff was unrepresented and stated that she had no additional evidence. During both days of the evidentiary hearing the trial court took judicial notice of its own file in Case No. 13-51332-NZ, without objection from the parties.

The trial court issued a written decision later that month, affirming the referee's calculation of moving expenses, storage costs, and attorney fees in this case at $15,000. The trial court also held that plaintiff was entitled to indemnification for the portion of the deficiency judgment against her that was related to the underlying loan and interest for nonpayment by defendant, which the court calculated to be about $215,000. As to attorney fees, the trial court relied on judicial notice of its file in the USAB litigation. The trial court found that $35,000 of USAB's attorney fees were related to the foreclosure litigation, while $23,800 of plaintiff's were. Thus, the trial court issued a money judgment in favor of plaintiff for $289,442.90. Later, the trial court granted in part defendant's motion for reconsideration related to collection of the judgment. Specifically, the trial court agreed with defendant that plaintiff would not be permitted to collect the judgment against defendant until she proved that USAB had begun collection of the deficiency judgment against her. After denying plaintiff's motion to reconsider that order, the appeal in Docket No. 346774 followed.

Then, on March 25, 2019, plaintiff moved the trial court to rescind the temporary spousal support order, arguing that it had erroneously remained in place despite defendant's voluntary withdrawal of the motion. Plaintiff argued that she was entitled to full retroactivity, and thus, an order for defendant to pay all arrearages from failing to tender $3,000 per month since March 1, 2016. Defendant argued that plaintiff was equally at fault for allowing the temporary order to remain in place, and thus, he should not have to pay for any arrearages. In considering the issue, the trial court found that neither party had acted fraudulently, but instead, there had been an oversight because of the litigation focused on the Saux Head

-4-

property. Therefore, the trial court decided to split the difference by rescinding the temporary order, but only providing retroactivity to September 1, 2017. Plaintiff moved for reconsideration, in which she also noted that the trial court had not addressed her request for sanctions against defendant. On May 17, 2019, the trial court denied plaintiff's motion for reconsideration and for sanctions. The appeal in Docket No. 349209 followed.

In the prior appeal, plaintiff focused on two separate areas—the Saux Head property and the temporary spousal support order. This Court dismissed several portions of the appeal because plaintiff failed to provide transcripts. The panel also reversed part of the trial court's order limiting plaintiff's collection of the money judgment. The panel remanded the case to the trial court for clarification or correction of the order. The trial court did so on remand, despite claims from plaintiff that the trial court should reconsider essentially all of the trial court's previous rulings. The trial court refused to do so, and plaintiff appealed as of right again.

## II. ISSUE WITHIN THE SCOPE OF THE REMAND

In this appeal as of right, plaintiff has only presented one issue within the scope of our previous remand to the trial court. Pertinently, she contends the trial court misread this Court's remand as allowing only for a clarification or correction of the order limiting her ability to collect on her money judgment against defendant. We disagree.

### A. STANDARD OF REVIEW

"Whether a trial court followed an appellate court's ruling on remand is a question of law that this Court reviews de novo." *Schumacher v Dep't of Natural Resources*, 275 Mich App 121, 127; 737 NW2d 782 (2007). "A trial court's factual findings are reviewed for clear error and its conclusions of law are reviewed de novo." *Id*. "Clear error occurs when this Court is left with the definite and firm conviction that a mistake has been made." *Skaates v Kayser*, 333 Mich App 61, 81-82; 959 NW2d 33 (2020) (quotation marks and citation omitted).

### B. LAW AND ANALYSIS

Plaintiff asserts that under this Court's remand instructions, the trial court was required to revisit all of her claims of damages arising out of her loss of the Saux Head property and litigation with USAB. This is patently wrong. "When an appellate court remands a case with specific instructions, it is improper for a lower court to exceed the scope of the order." *Int'l Business Machines, Corp v Dep't of Treasury*, 316 Mich App 346, 350; 891 NW2d 880 (2016) (quotation marks and citation omitted). Moreover, "this Court's ruling on an issue in a case will bind a trial court on remand and the appellate court in subsequent appeals." *Schumacher*, 275 Mich App at 127. This Court provided a more detailed summary of the law regarding the scope of a remand in *Glenn v TPI Petroleum, Inc*, 305 Mich App 698, 703; 854 NW2d 509 (2014).

> The power of the lower court on remand is to take such action as law and justice may require so long as it is not inconsistent with the judgment of the appellate court. . . .[W]hen an appellate court gives clear instructions in its remand order, it is improper for a lower court to exceed the scope of the order. It is the duty of the

-5-

lower court or tribunal, on remand, to comply strictly with the mandate of the appellate court. [Quotation marks and citation omitted.]

Interestingly, plaintiff contends the trial court violated the scope of this Court's remand by refusing to redetermine the damages she suffered as a result of defendant's failure to pay the USAB loan and defend against USAB's foreclosure. To the contrary, the trial court read this Court's remand as limited to deciding what portion of the already issued judgment for money damages plaintiff could collect. The trial court's understanding of this Court's decision is correct. After the panel determined plaintiff's failure to provide transcripts resulted in a waiver of her substantive claims related to the trial court's judgment, the footnote at issue stated the following:

> We do, however, have a sufficient record to determine that the trial court improperly limited plaintiff's collection of the money judgment against defendant. Specifically, the trial court ordered that plaintiff could not collect on her judgment until she proved that USAB had initiated collection of the deficiency judgment against her. The trial court's expressed intention in issuing the order was to ensure that she did not collect money for damages that she had yet to incur. However, the judgment and order providing the money judgment to plaintiff did not arise solely from the deficiency judgment. To the contrary, $15,000 of the judgment was related to moving fees, storage costs, and attorney fees in this case; and $23,800 was attributed to attorney fees plaintiff already spent in Case No. 13-51332-NZ. Thus, we reverse the trial court's order limiting plaintiff's collection of the judgment, and remand with instructions to clarify the appropriate portion of the judgment regarding which plaintiff has already suffered damages. [*Mitchell*, unpub op at 6-7 n 5.]

As the trial court cogently explained, this Court's order merely directed the trial court to address how much of the judgment plaintiff could collect before USAB began collection proceedings. While the trial court had denied her the right to collect any of the judgment until such time, the trial court agreed with this Court's identification of some damages already having been incurred by plaintiff. In other words, plaintiff had already spent $38,800 of the money in the judgment, but would not be responsible for the remainder until USAB began collection proceedings in the other case.

Further, the trial court noted that, since the present case had been on appeal, USAB had begun collection proceedings against plaintiff in the other case. Therefore, the order by the trial court limiting plaintiff's ability to collect on the money judgment had been rendered moot. As such, the trial court informed plaintiff she could begin collection proceedings on the entire money judgment, without limitation. By doing so, the trial court properly fulfilled its duty on remand "to comply strictly with the mandate of the appellate court." *Glenn*, 305 Mich App at 703 (quotation marks and citation omitted). Indeed, had the trial court acted as requested by plaintiff and revisited all of the factual and legal decisions from which the money judgment had been reached, it would have gone beyond the limited purpose of the remand as instructed by this Court. Such an act would have required us to reverse. *Id.* Therefore, because the trial court acted properly within the scope of this Court's remand instructions, plaintiff's argument under this issue lacks merit.

## III. ISSUES OUTSIDE THE SCOPE OF REMAND

Plaintiff raises an array of issues challenging the trial court's decisions made before the original appeal as of right. Because those arguments are outside of the scope of the remand and this appeal, contain improper collateral attacks on the previous opinion, and partially run afoul of the law-of-the-case doctrine, we refuse to consider their merits.

### A. STANDARD OF REVIEW

"The issue of whether the law-of-the-case doctrine applies is a question of law that this Court reviews de novo." *Pioneer State Mut Ins Co v Wright*, 331 Mich App 396, 406; 952 NW2d 586 (2020). Additionally, "[w]hether the lower court properly followed an appellate court's ruling on remand is a question of law that this Court reviews de novo." *Id.* (quotation marks and citation omitted).

### B. LAW AND ANALYSIS

The scope of a second appeal is limited by the scope of the proceedings on remand. *People v Jones*, 394 Mich 434, 435-436; 231 NW2d 649 (1975); see *People v Burks*, 128 Mich App 255, 257; 339 NW2d 734 (1983) (concluding that "[i]ssues outside the scope of a remand order will not be considered on appeal following remand").[2] "[W]hen an appellate court gives clear instructions in its remand order, it is improper for a lower court to exceed the scope of the order. It is the duty of the lower court or tribunal, on remand, to comply strictly with the mandate of the appellate court." *Glenn v TPI Petroleum, Inc.*, 305 Mich App 698, 703; 854 NW2d 509 (2014) (quotation marks and citation omitted).

Similarly, under the law-of-the-case doctrine, this Court is limited by the scope of the remand from our previous opinions. This Court recently restated the law regarding the law-of-the-case doctrine in *In re Berrien Co Treasurer for Foreclosure*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 352954); slip op at 8:

> Under the law of the case doctrine, if an appellate court has passed on a legal question and remanded the case for further proceedings, the legal questions thus determined by the appellate court will not be differently determined on a subsequent appeal in the same case where the facts remain materially the same. The appellate court's decision likewise binds lower tribunals because the tribunal may not take action on remand that is inconsistent with the judgment of the appellate court. Thus, as a general rule, an appellate court's determination of an issue in a case binds lower tribunals on remand and the appellate court in subsequent appeals. [Quotation marks, citation, and emphasis omitted.]

---

[2] "Although cases decided before November 1, 1990, are not binding precedent, MCR 7.215(J)(1), they nevertheless can be considered persuasive authority." *In re Stillwell Trust*, 299 Mich App 289, 299 n 1; 829 NW2d 353 (2012).

If a party disagrees with a decision of the appellate court, that party's remedy is to ask for rehearing, or to appeal the decision to a higher court. *Bruce Twp v Gout* (*After Remand*), 207 Mich App 554, 557-558; 526 NW2d 40 (1994). Moreover, "[i]t is well established in Michigan that, assuming competent jurisdiction, a party cannot use a second proceeding to attack a tribunal's decision in a previous proceeding." *Workers' Compensation Agency Dir v MacDonald's Indus Prod, Inc (On Reconsideration)*, 305 Mich App 460, 474; 853 NW2d 467 (2014); see *In re Indiana Mich Power Co*, 329 Mich App 397, 406; 942 NW2d 639 (2019) (holding that collateral attacks are generally impermissible unless the tribunal lacked subject matter or personal jurisdiction).

In plaintiff's first appeal by right, this Court narrowly remanded the case to the trial court to correct or clarify its October 30, 2018 order limiting plaintiff's collection of judgment regarding the amount of money damages that could be collected before USAB began collection proceedings against plaintiff. *Mitchell*, unpub op at 6 n 5. The remaining issues raised in that appeal were either dismissed or found to be without merit. *Id*. at 16. Plaintiff now appeals the trial court's order following remand by this Court. However, plaintiff raises a number of new arguments that this Court will not consider because those arguments are outside the scope of remand, barred by the law-of-case-doctrine, or are improper collateral attacks.

Affirmed.

/s/ Michelle M. Rick
/s/ Mark T. Boonstra
/s/ Colleen A. O'Brien