*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PREMIERE PROPERTY SERVICES, INC.,

          Plaintiff/Counterdefendant-Appellant,

v

MATTHEW CRATER, FRESH OUTLOOK
PAINTING, LLC, and BETTER BRUSH
PAINTING, LLC,

          Defendants/Counterplaintiffs,

and

TRUE NORTH PAINTING, LLC,

          Garnishee Defendant-Appellee.

FOR PUBLICATION
September 17, 2020
9:05 a.m.

No. 350784
Kent Circuit Court
LC No. 18-004204-CB

Before: SHAPIRO, P.J., and SERVITTO and LETICA, JJ.

SHAPIRO, P.J.

Plaintiff Premiere Property Services, Inc. (plaintiff), served a writ of periodic garnishment on Truth North Painting, Inc. (True North), to satisfy a judgment obtained against defendants Matthew Crater, Fresh Outlook Painting, LLC, and Better Brush Painting, LLC (defendants). True North filed a disclosure acknowledging that it was obligated to make payments to defendants as subcontractors, but instead of withholding the entire amount owed to defendants, True North withheld only 25% and paid the remaining 75% to Crater under the mistaken belief that it could treat the garnished funds as wage earnings owed to an employee. After plaintiff brought a motion to recover the amount of the other 75% from True North, Crater filed for bankruptcy. The trial court denied plaintiff's motion, concluding that it would not hold True North liable for the amount of payments made to Crater and that plaintiff needed to seek recovery from Crater in the bankruptcy court instead. The trial court also granted True North's motion for a protective order prohibiting plaintiff from further discovery. Plaintiff appeals both rulings. We reverse in full and remand for further proceedings.

## I. FACTS & PROCEDURAL HISTORY

In the underlying action, plaintiff obtained a judgment against Crater and two companies that he owns or controls, Better Brush and Fresh Outlook, in the amount of $331,320.67. That case arose out of a dispute between plaintiff and Crater. Plaintiff hired Crater to solicit and manage painting projects. Plaintiff terminated the employment relationship in April 2018 and brought suit in May 2018, alleging that Crater breached a confidentiality and non-solicitation agreement both during and after his employment by using confidential information regarding plaintiff's customers to secure paint jobs for Better Brush and Fresh Outlook. Eventually, the trial court entered a default against defendants for failure to appear at a status conference. After an evidentiary hearing on damages, the trial court entered a default judgment against the defendants as well as a permanent injunction ordering them to comply with the confidentiality and non-solicitation agreement.

Plaintiffs sought to collect on its judgment against defendants by seeking writs of garnishment directed at assets of defendants held by others. On March 15, 2019, the clerk of the court issued a writ for periodic garnishment against True North ordering it to withhold payments to defendants and instead "make all payments withheld under this writ payable to the plaintiff." The writ directed True North to "not pay any obligations to the defendant unless allowed by statute or court rule" and that "if indebted to the defendant, withholding must begin according to court rule and continue until the judgment is satisfied." On April 4, 2019, True North filed a disclosure stating that it was obligated to pay defendants monthly earnings, describing the nature of those payments as "subcontractor progress payment[s]."[1] The disclosure stated that True North would begin withholding "immediately if sufficient funds are available."

On April 12, 2019, plaintiff served True North with interrogatories, seeking information about its contracts with defendants and payments made to them. True North submitted its initial response on April 20, 2019, which included invoices showing that it made three substantial payments to Crater *after* it had been served with the garnishment. True North's payments to Crater totaled $22,746.64, while withholding only $7,610.62 for plaintiff. Through communications with True North's president, Troy TerVeen, plaintiff's counsel learned that True North was withholding only 25% of the garnished funds on the grounds that the payments to Crater were earnings owed to an employee.[2] Plaintiff's counsel told TerVeen that True North needed to withhold 100% of the funds owed to defendants because Crater was a subcontractor of True North, not an employee.

---

[1] MCR 3.101(H) requires that within 14 days after being served with the writ, the garnishee file a disclosure. True North's disclosure was not filed, however, until 24 days after it received the writ.

[2] MCR 3.101(G)(1)(f) provides that a garnishee is liable for "the portion of the defendant's earnings that are not protected from garnishment by law (see, e.g., 15 USC 1673) as provided in subrule (B)[.]" In turn, 15 USC 1673 (a)(1) provides in part that

> the maximum part of the aggregate disposable earnings of an individual for any workweek which is subjected to garnishment may not exceed
>
> (1) 25 per centum of his disposable earnings for that week[.]

On May 24, 2019, True North supplemented its discovery response with documents that plaintiff believed showed an ongoing relationship between True North and defendants. Plaintiff's counsel's urged True North to seek legal counsel, which it did. Since obtaining counsel, True North has not contended that paying Crater 75% of the funds was proper.

True North's counsel, however, objected to a notice of deposition served on True North on or about May 17, 2019. Plaintiff agreed to adjourn the deposition, and on June 7, 2019, filed a "motion for turnover of funds and/or discovery." Plaintiff was primarily seeking a judgment against True North in the amount of the three payments made to Crater, i.e., the other 75% of the garnished funds. Plaintiff alternatively sought an order declaring that it could depose True North.

On June 26, 2019, Crater filed a chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Western District of Michigan. On July 16, 2019, True North filed a response to plaintiff's motion for turnover of funds or discovery. True North argued that further proceedings to collect debt owed or allegedly owed to Crater were prohibited by the automatic stay provided by the bankruptcy petition pursuant to 11 USC 362. True North asserted that the disputed payments were made to Crater, not his codefendants; that it made no payments to Crater's codefendants; and that it had no ongoing obligation to them. As to discovery, True North argued that plaintiff could not seek a deposition under MCR 3.101(L)(1) because it elected to send interrogatories instead. True North also argued that plaintiff's request for deposition was time barred by MCR 3.101(L)(1)'s 14-day window.

The motion hearing was held on July 19, 2019. Plaintiff argued that Crater's bankruptcy petition was of no moment because True North's contract was with Better Brush, a corporation that was not seeking bankruptcy protection, and that True North's prepetition payments had been made to that corporation, not Crater. Plaintiff conceded, however, that if those payments were due to Crater in his individual capacity, recovery of those amounts was covered by the bankruptcy stay.

The trial court first granted the motion for a protective order, agreeing with True North that plaintiff could serve interrogatories or notice a deposition under MCR 3.101(L)(1), but not both. Alternatively, the court declined to exercise its discretion to extend the time for noticing a deposition because further discovery was not necessary. The court explained that if it granted plaintiff's motion it would effectively be obligating True North to pay "175 percent" of the garnished funds, i.e., True North would have to pay plaintiff an amount equaling the 75% of garnished funds that it already paid to Crater. The court said it would be improper to hold True North liable for the amount it incorrectly paid Crater. The court also indicated that imposing liability against True North was inappropriate because plaintiff could seek recovery of those funds in the bankruptcy court. The court entered orders denying plaintiff's motion for turnover of funds or discovery and granting a protective order, and later it denied plaintiff's motion for reconsideration challenging both orders.

## II.  ANALYSIS

### A.  GARNISHEE LIABILITY

On appeal, plaintiff first argues that the trial court erred by failing to issue a turnover order for the amount of the contested funds.  Setting aside the bankruptcy proceedings for the moment, we agree with plaintiff that the trial court erred by denying plaintiff entry of judgment on the grounds that it would not hold True North liable for the amount that it paid to Crater in violation of the writ.[3]

> Once a judgment is obtained, garnishment is a legitimate and common procedure to satisfy a claim.  The design of a garnishment proceeding is to preserve a principal defendant's assets in the control of the garnishee, i.e., one who has property or money in his possession belonging to the defendant, so that the assets may later be accessible to satisfy a judgment against the principal defendant.  Rather than being a new or different action, a garnishment proceeding is ancillary to the original suit.  [*Ward v Detroit Auto Inter-Ins Exch*, 115 Mich App 30, 35; 320 NW2d 280 (1982).]

Garnishment is governed by Chapter 40 of the Revised Judicature Act of 1961, MCL 600.4001 *et seq.*  "Garnishment proceedings are entirely creatures of statute and are to be strictly construed." *Westland Park Apartments v Ricco, Inc*, 77 Mich App 101, 104 n 1; 258 NW2d 62 (1977).  MCL 600.4011 authorizes garnishment against:

> (a) Personal property belonging to the person against whom the claim is asserted but which is in the possession or control of a third person if the third person is subject to the judicial jurisdiction of the state and the personal property to be applied is within the boundaries of this state.

> (b) An obligation owed to the person against whom the claim is asserted if the obligor is subject to the judicial jurisdiction of the state.  [MCL 600.4011(1)(a)-(b).]

"The court may exercise its garnishment power only in accordance with the Michigan Court Rules." *Nationsbanc Mortg Corp of Georgia v Luptak*, 243 Mich App 560, 564; 625 NW2d 385 (2000).

MCR 3.101 is the court rule governing garnishment after judgment.  There are two types of postjudgment garnishments: periodic and nonperiodic.  MCR 3.101(B)(1)-(2).  Periodic garnishments are garnishments of periodic payments, including "wages salary, commissions, bonuses, and other income paid to the defendant during the period of the writ; land contract

---

[3] This issue turns on the interpretation of statute and court rule, which is a question of law that we review de novo.  See *Henry v Dow Chemical Co*, 484 Mich 483, 495; 772 NW2d 301 (2009).

-4-

payments; rent; and other periodic debt or contract payments." MCR 3.101(A)(4). A periodic garnishment continues until the judgment is satisfied. MCL 600.4012(1); MCR 3.101(B)(1)(a).

MCR 3.101(E) requires that the writ of garnishment direct the garnishee to "pay no obligation to the defendant, unless allowed by statute or court rule." MCR 3.101(E)(3)(d). This is known as the "injunction provision" of the garnishment court rules. See *Royal York of Plymouth Ass'n v Coldwell Banker Schweitzer Real Estate Servs*, 201 Mich App 301, 306; 506 NW2d 279 (1993). The court rule governing withholding for periodic payments provides that "the writ shall be effective as to obligations owed and property held by garnishee as of the time writ is served on the garnishee." MCR 3.101(I)(1).[4]

MCR 3.101(G) governs the garnishee's liability. MCR 3.101(G)(1) "delineates the various categories of items for which a garnishee is liable." *Nationsbanc Mortg Corp of Georgia*, 243 Mich App at 564. In part, MCR 3.101(G)(1) provides:

> (1) Subject to the provisions of the garnishment statute and any setoff permitted by law or these rules, the garnishee is liable for
>
> * * *
>
> (d) all debts, whether or not due, owing by the garnishee to the defendant when the writ is served on the garnishee, except for debts evidenced by negotiable instruments or representing the earnings of the defendant[.] [MCR 3.101(G)(1)(d).]

"The garnishee is liable for no more than the amount of the unpaid judgment, interest, and costs as stated in the verified statement requesting the writ of garnishment . . . ." MCR 3.101(G)(2).

In this case, the garnishee's liability is not disputed. That is, True North does not contest that it was required to withhold all payments due to defendants after service of the writ and that it violated the writ by making three payments to Crater. Nonetheless, the trial court denied plaintiff's request for a judgment against True North because it had already paid Crater the garnished funds. Under such reasoning, a garnishee who violates a writ of garnishment by making payment directly to the defendant cannot be held liable because it is no longer in possession of an obligation owed to the defendant. We reject this reasoning as circular.

---

[4] MCL 600.4012 was substantially amended in 2015, 2015 PA 14, to provide a detailed procedure for obtaining a default and default judgment against a garnishee. See MCL 6000.4012(6)-(10); MCR 3.101(S)(1)(b). The statute provides that the plaintiff may seek a default when, among other requirements, the garnishee "fails to perform any other required act . . . ." MCL 600.4012(6)(a). However, True North does not argue that plaintiff was required to follow that statute. Accordingly, whether a "motion for turnover of funds" was the correct procedural mechanism to obtain a judgment in this case is not before us and we express no opinion on that matter.

Plaintiff relies on *Chayka v Brown*, 92 Mich App 360; 284 NW2d 530 (1979),[5] which is instructive. In that case, the garnishee "paid funds owing to Principal Defendants after service of the writs of garnishment issued by the District Court, contrary to the express prohibitions therein." *Id*. at 364-365. The trial court entered a judgment against the garnishee, ordering it to pay the plaintiffs 1 ¼ of the balance owed under the previous judgment pursuant to the penalty provision then provided by GCR 1963, 738.5. *Id*. This Court reversed the imposition of the penalty, but affirmed that the garnishee was liable to the plaintiff for the payments made to the defendant in violation of the writ:

> [The writs] directed the Garnishee Defendant to deliver no tangible or intangible property to principal defendants unless allowed by statute, court rule or court order. They also clearly indicated that Garnishee Defendant was not to pay any obligations to the principal. Yet, while these writs were in effect, Garnishee Defendant accelerated its installment payments to Principal Defendants under the land contract and took title to the property.
>
> Garnishees' duties and obligations under the rules and their potential liability to the plaintiffs attach at the time they are properly served with the writ. GCR 1963, 738.4, 738.5. They then become responsible for the timely performance of the specific duties imposed by GCR 1963, 738, at the risk of default judgment against them which may be executed against their own funds or property, GCR 1963, 738.8.[6] [*Id*. at 368-369.]

The Court concluded that the garnishee's "violation of the express prohibitions embodied in these writs cannot be sanctioned." *Id*. at 370.

Thus, while the garnishee in *Chayka* no longer had any obligation to the defendant, it was nonetheless liable to the plaintiff for amount of the payments made to the defendant in violation of the writ. In this case, by denying plaintiff a garnishment judgment on the grounds that it would not hold True North liable for the amount of payments made to Crater, the trial court implied that garnishment judgments may not be executed against the garnishee's personal assets. However, there is nothing in the garnishment statute or court rule that indicates that a garnishment judgment

---

[5] A decision from this Court published before November 1, 1990, is not binding but may be relied on for its persuasive value. *In re Stillwell Trust*, 299 Mich App 289, 299 n 1; 829 NW2d 353 (2012).

[6] We recognize that at the time *Chayka* was decided, GCR 1963, 738.8 provided that "[j]udgment shall not be rendered against the garnishee or his property until after judgment has been recovered by the plaintiff against the principal defendant." However, that *provision*—not just the phrase "or his property"—was not included in the Michigan Court Rules, effective March 1, 1985, which provided separate rules governing post- and pre-judgment garnishment. See MCR 3.101-MCR 3.102. So we do not view the absence of this provision in the current court rules as supporting a conclusion that garnishees may not be held personally liable to the plaintiff.

for a sum certain should be treated differently than any other money judgment.  MCR 3.101(O)(1) provides:

> Judgment may be entered against the garnishee for the payment of money or the delivery of specific property as the facts warrant.  A money judgment against the garnishee may not be entered in an amount greater than the amount of the unpaid judgment, interest, and costs as stated in the verified statement requesting the writ of garnishment.  Judgment for specific property may be enforced only to the extent necessary to satisfy the judgment against the defendant.

While the *amount* of the garnishee's liability is determined by the property belonging to or the obligation owed to the defendant, see MCR 3.101(G)(1), that says nothing about how that liability may be satisfied.  In other words, it does not follow that a garnishee's liability may be satisfied only with the defendant's assets if the garnishee fails to adhere to the requirements imposed on a garnishee.  That interpretation would allow garnishees to escape all liability by turning over property and paying obligations to the defendant in violation of the writ.  And in interpreting statutes and court rules, we are mindful of avoiding absurd results.  See *McAuley v Gen Motors Corp*, 457 Mich 513, 518; 578 NW2d 282 (1998).

Significantly, True North does not dispute that, as a general matter, garnishees may be held personally liable to the plaintiff.  Instead, True North argues that this result was not warranted in this case because it made efforts to comply with the garnishment.  We first note that plaintiff disputes that True North's improper payments to Crater were the result of a good-faith mistake.  But setting that aside, True North does not identify any court rule, statute, or caselaw that grants trial courts the discretion to deny the plaintiff recovery because of inadvertent noncompliance.[7]

---

[7] We are aware of only one provision that contemplates consideration of the garnishee's intent in determining the amount of judgment against a garnishee.  If a plaintiff obtains a default judgment for a periodic garnishment, which may be in the full amount of the unpaid judgment, see MCL 600.4012(9), and the garnishee files a motion within 21 days:

> [T]he court shall do 1 or more of the following, as applicable:
>
> (a) If the garnishee certifies by affidavit that its failure to comply with the garnishment was inadvertent or caused by an administrative error, mistake, or other oversight and it will immediately begin withholding any available funds or immediately begin performing any other required act pursuant to the garnishment as provided by statute or court rule, reduce the default judgment to not more than the amount that would have been withheld if the garnishment had been in effect for 56 days.  [MCL 600.4012(10)(a).]

Thus, MCL 600.4012(10) applies to a very limited circumstance, and it does not grant the trial court discretion to deny recovery against the garnishee but merely to reduce a prior default judgment to payments that should have been withheld within 56 days of the service of the writ.

-7-

The trial court was concerned about imposing double liability on True North, i.e., holding the garnishee liable to pay plaintiff the same amount that it improperly paid to defendant. However,[8] that concern must be weighed against the fact that garnishment is a key mechanism for prevailing parties to enforce money judgments obtained through the courts. Allowing a garnishee to transfer garnished funds to a defendant without risk of liability could greatly frustrate that remedy, the purpose of which is "to preserve a principal defendant's assets in the control of the garnishee." *Ward*, 115 Mich App at 35. In addition, our holding merely requires garnishees to obey the law by performing their responsibilities defined by statute and court rule. We see no reason to deviate from those provisions simply because a garnishee fails to accurately understand its legal responsibility.

In sum, the trial court erred by denying plaintiff's request for entry of judgment on the basis that it would not hold True North personally liable for the amount paid to Crater in violation of the writ of garnishment.

## B. BANKRUPTCY

In denying plaintiff's motion for turnover of funds, the court opined that further proceedings on the garnishment were subject to the bankruptcy stay arising out of Crater's bankruptcy petition.

11 USC 362 provides for an "automatic stay" upon the filing of a bankruptcy petition. *Frederick v Federal-Mogul Corp*, 273 Mich App 334, 337-338; 733 NW2d 57 (2006). "The automatic stay goes into effect upon the filing of a bankruptcy petition, prohibiting certain actions against the debtor or property of the bankruptcy estate." *In re Buchanan*, 273 BR 749, 751 (Bankr MD Ga, 2002). It is well settled that the automatic stay applies to garnishment proceedings. See e.g., MCR 3.101(K)(2)(b) (a defendant may object to a writ of garnishment within 14 days on the grounds that "garnishment is precluded by the pendency of bankruptcy proceedings.").

We have no doubt, therefore, that the bankruptcy stay applied to the garnishment directed at True North insofar as it sought funds due the bankrupt party, Crater. However, the other defendants, Better Brush and Fresh Outlook, are not in bankruptcy and plaintiff maintains that the sums paid to Crater by True North were actually due the companies and not Crater personally. If true, then Crater's bankruptcy would not stay any enforcement of a garnishment seeking assets of Better Brush or Fresh Outlook. No grounds have been presented to apply a bankruptcy stay to a garnishment directed at collecting sums due from the garnishee to someone other than the bankrupt party.

---

[8] We note that "[a] garnishee may recover an amount for which the garnishee is liable because of the entry of a default judgment under subsection (9) or (10) from future periodic payments to the defendant as provided in section 7 of 1978 PA 390, MCL 408.477." MCL 408.477 governs deduction from wages, and so is not applicable to this case. However, it shows that the Legislature is aware that garnishees may be held personally liable, otherwise a right of recovery against the defendant would not be necessary.

The trial court determined, however, that regardless of who the payments were actually owed, plaintiff needed to seek recovery of the contested payments from Crater in the bankruptcy proceedings. Yet the question before the trial court was more limited, i.e., whether Crater's bankruptcy precluded further proceedings to enforce garnishment in the state court until such time that the bankruptcy was resolved.[9] To the extent that the trial court ruled that plaintiff had to seek recovery from the bankruptcy trustee rather than seek collection through garnishment, it was in error. Plaintiff's motion to enforce the garnishment is based on the *garnishee's* liability, a matter within the trial court's, as opposed to the bankruptcy court's, jurisdiction.

Accordingly, we conclude that remand for further proceedings is necessary. The trial court shall address plaintiff's argument that the bankruptcy stay does not prevent further garnishment proceedings against True North because the payments made in violation of the writ were actually owed to Better Brush or Fresh Outlook and so not part of the bankruptcy estate. The court shall make factual findings as necessary and may consider the current status of the bankruptcy proceedings.

## C. DISCOVERY

The final issue concerns the scope of discovery in garnishment proceedings. Plaintiff argues that the trial court erred by granting a protective order precluding plaintiff from deposing True North.

The starting point is MCR 3.101(L)(1), which provides:

Within 14 days after service of the disclosure, the plaintiff may serve the garnishee with written interrogatories or notice the deposition of the garnishee. The answers to the interrogatories or the deposition testimony becomes part of the disclosure.

Also relevant is MCR 3.101(M)(2), which provides in part that "[t]he facts stated in the disclosure must be accepted as true unless the plaintiff has served interrogatories or noticed a deposition within the time allowed by subrule (L)(1) or another party has filed a pleading or motion denying the accuracy of the disclosure." Finally, MCR 3.101(T)(2)-(5) provides the trial court discretion to extend the time for the plaintiff's filing of written interrogatories and a demand for oral examination of the garnishee, as well as the garnishee's answer to interrogatories and appearance for oral examination.

Plaintiff argues that MCR 3.101(L) merely requires it to initiate discovery within 14 days by either serving written interrogatories or noticing deposition of the garnishee to prevent the disclosure from becoming final, and that it is not prevented from pursuing further discovery so

---

[9] "The automatic stay provides protection from the time a case is filed *until entry of discharge or dismissal of the case*." *In re Ridley*, 572 BR 352, 360 (Bankr ED Okla, 2017) (emphasis added). By itself, the filing of a bankruptcy petition does not resolve or function as a dismissal of the pending garnishment proceedings.

long as it initiates discovery within the 14-day time period. True North argues, and the trial court agreed, that plaintiff could only pursue one avenue of discovery within the 14-day period, either interrogatories or a deposition, and that plaintiff may not be granted any further discovery. Alternatively, to the extent that both interrogatories and a deposition could be pursued, the trial court took the view that the notice of deposition would also have to be filed within 14 days, and the court declined to exercise its discretion under MCR 3.101(T) to extend that time period.

We conclude that *Decker v Trux R Us, Inc*, 307 Mich App 472; 861 NW2d 59 (2014), controls resolution of this issue. As the trial court noted in rendering its decision, *Decker* is the only case of record construing the interaction between MCR 3.101(L), (M) and (T). In that case, the plaintiff failed to either service interrogatories or notice deposition of the garnishee within 14 days of the disclosure. The plaintiff later filed a motion under MCR 3.101(T) to extend the time to serve interrogatories on the garnishee, and the trial court denied the motion. *Id*. at 476-477. We affirmed, reasoning that the plaintiff could not seek an extension of the time for serving interrogatories under MCR 3.101(T) because it failed to pursue discovery within MCR 3.101(L)'s 14-day time window, thus rendering the garnishee's disclosure final under MCR 3.101(M)(2). See *id*. at 479-481. Significantly, we did not view this interpretation as creating an irreconcilable conflict between MCR 3.101(L) and (T) because we determined that "the trial court can exercise its discretion to extend discovery as long as the plaintiff has complied with MCR 3.101(M)(2)," *id*. at 481, i.e., if the plaintiff serves interrogatories or notices the garnishee's deposition within 14 days of the disclosure, then the trial court may extend the time for seeking additional discovery.

*Decker*'s holding that the trial court can grant further discovery under MCR 3.101(T) so long as the plaintiff initiates discovery within the 14-day period is dispositive of the question before us. Per *Decker,* because plaintiff served interrogatories within 14 days of garnishee's disclosure under MCR 3.101(L)(1), the trial court had discretion to grant further discovery pursuant to MCR 3.101(T), including extending the time for filing a demand for oral examination of the garnishee.[10] We note that allowing a plaintiff to depose the garnishee (at the court's discretion) under these circumstances may save time and expense of all parties. When the answer to interrogatories raises additional questions, as was purportedly the case here, a deposition may provide clarification on whether additional proceedings are necessary and, if so, should allow for a more expeditious resolution.

As noted, the trial court alternatively granted the protective order on the grounds that it was declining to exercise its discretion under MCR 3.101(T) given the pending bankruptcy petition. That rationale is questionable, however, because the court did not address plaintiff's argument that the bankruptcy stay does not apply to contested payments that were due to Better Brush or Fresh

---

[10] Plaintiff also argues that once it timely complies with MCR 3.101(L)'s 14-day time period, then it has a *right* to conduct discovery in accordance with the court rules of discovery. Plaintiff relies on MCR 3.101(L)(3), which provides that "[t]he discovery rules apply to garnishment proceedings." However, this interpretation is inconsistent with *Decker*'s holding a trial court has *discretion* to grant further discovery so long as discovery is initiated within 14 days of the disclosure.

Outlook. If the trial court determines on remand that the garnishment proceedings against True North are wholly precluded by the bankruptcy stay, then we agree that further discovery would not be necessary at this time. However, if the court concludes that the bankruptcy stay does not preclude further proceedings against True North, at least as to any sums True North owed Better Brush or Fresh Outlook, then it should decide, on the merits, whether plaintiff's request to depose of True North is warranted under the circumstances.[11]

## III. CONCLUSION

To summarize, we reverse and remand for three reasons. First, the trial court erred by denying plaintiff's request for a judgment on the grounds that it would not hold True North personally liable for the amount of payments made to Crater in violation of the writ. Second, while the bankruptcy proceedings may in fact stay garnishment proceedings against True North, the trial court failed to adequately address plaintiff's argument that the payments were actually due to Better Brush or Fresh Outlook and so not subject to the stay. The trial court shall address that matter on remand. Third, if the trial court concludes that further proceedings against True North are not precluded by the stay, the court shall decide whether to grant plaintiff's request for a deposition.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Douglas B. Shapiro
/s/ Deborah A. Servitto
/s/ Anica Letica

---

[11] At plaintiff's request, on June 12, 2019, the trial court issued a subpoena for True North to appear for a "debtor's examination." In its initial brief, plaintiff asserted—without any elaboration—that the subpoena was governed by MCR 2.621 (proceedings supplementary to judgment) but then proceeded to analyze MCR 3.101(L) only. In its reply brief, plaintiff now argues that the trial court committed reversible error by not analyzing the subpoena as having been issued under MCR 2.621. "[R]aising an issue for the first time in a reply brief is not sufficient to present the issue for appeal." *Bronson Methodist Hosp v Michigan Assigned Claims Facility*, 298 Mich App 192, 199; 826 NW2d 197 (2012). Accordingly, this argument is not properly before us. *Id.* Also, we note that a specific court rule controls over a more general court rule. See *Haliw v Sterling Heights*, 471 Mich 700, 706; 691 NW2d 753 (2005); MCR 1.103.