*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* PASQUALE STORTO, JR. TRUST.

---

LINDA BEAUMONT, Trustee of the PASQUALE
STORTO, JR. LIVING TRUST,

        Respondent-Appellant,

v

PRISCILLA PARNESS,

        Petitioner-Appellee,

and

LEAH STORTO, BROOKS GUAY, AARON
GUAY, AMBER GUAY, and BRETT GUAY,

        Interested Parties.

UNPUBLISHED
January 12, 2023

No.  360134
Oakland Probate Court
LC No.  2020-397354-TV

---

Before:  M. J. KELLY, P.J., and BOONSTRA and SWARTZLE, JJ.

PER CURIAM.

Respondent, in her capacity as trustee of the Pasquale Storto, Jr. Living Trust (the Trust), appeals by right the probate court's order granting petitioner's motion for summary disposition under MCR 2.116(C)(10).  We affirm.

## I.  PERTINENT FACTS AND PROCEDURAL HISTORY

Pasquale Storto, Jr. (Storto), the settlor of the Trust, executed it on October 17, 2005; he served as the trustee until his death in May 2020.  Respondent is Storto's sister and was the first successor trustee under the Trust; she served as trustee after Storto's death.  Petitioner was Storto's romantic partner from 2005 until his death.  The other interested parties are Storto's step-grandchildren and ex-wife, all of whom are beneficiaries under the Trust.

-1-

The Trust contains the following provisions pertinent to this case:

[T]he Settlor may desire to prepare a written statement or list, either entirely in his handwriting or just signed by him, to dispose of tangible personal property to a certain person or person[s] in the future. . . .  If the list does not qualify as an amendment, I nevertheless hope those entitled to my estate will respect it.

"Tangible Personal Property" means personal (not used primarily in a business) boats, books, china, clothing, furnishings, furniture, glass, household items, jewelry, lawn, and garden equipment, motor vehicles, personal effects, pictures, recreational items, rugs, silver, works of art, and any other similar items, and includes any insurance on that property.  Trustee shall determine which items are within this definition, and the determination shall bind all persons.

\* \* \*

The residue of the Trust Fund, real and personal, shall be distributed as follows: 1) The Settlor's sister, LINDA BEAUMONT, shall receive fifty percent (50%) of the total trust residue.  2) Each of the following grandchildren of the Settlor: BROOKES GUAY, AARON GUAY, BRETT GUAY, AMBER GUAY, and the Settlor's ex-wife, LEAH STORTO shall receive ten percent (10%) of the total residue.

\* \* \*

I reserve the right to amend or revoke this Agreement, wholly or partly, by a writing signed by me or on my behalf and delivered to Trustee during my life.

The Trust was amended twice in 2008; neither amendment is challenged on appeal.  A document purported to be a subsequent amendment is at the center of this appeal.

After Storto's death, petitioner provided estate documents to respondent.  Among those documents was a "Memorandum Regarding Desire [sic] Distribution of Personal Property" (the Memo).  Respondent testified in her deposition that petitioner brought her various documents on multiple occasions.  On one of those occasions, petitioner brought her a binder containing the Trust and other documents; respondent testified that "[t]o the best of [her] knowledge," the Memo was not included in the binder.  According to respondent, it was on a separate occasion that petitioner brought her either an original or a copy of the Memo[1] along with documentation regarding a vacation timeshare referenced in the Memo.  Respondent testified that she photocopied the Memo and gave it back to petitioner.  Petitioner disputed respondent's version of events, attesting in an affidavit that the original signed Memo was located in the binder of Storto's estate planning documents, and that in or about June 2020, after she took a picture of the Memo, she gave the

---

[1] Respondent testified that she "did not pay attention to whether what she gave me was an original or a copy."

binder (including the Memo) to respondent.[2] The original Memo was not produced during the proceedings below.

The Memo begins in typewriting: "Certain of my personal effects have special meaning; I desire that upon my death, these items be given to those herein indicated." Below this preface are spaces for listings of "Description of personal property" and "desired recipient and relationship." Filled in, in handwriting, on the Memo are "my personal vehicle," "home, 4880 Westland," and "$50,000 – cash minimum," as personal property to be distributed to petitioner. The Memo reflects that Storto signed it on November 21, 2011. Beneath that signature is another handwritten entry, "Pinestead Reef vacation time share,"[3] also as personal property to be distributed to petitioner, beneath which appears another signature of Storto, this one dated June 24, 2017. While the parties agree that the signatures and handwriting on the Memo are Storto's, respondent claims that neither she, nor anyone else of whom she knew, had any discussion with Storto regarding the Memo or the disposition of the property listed in it.

In November 2020, petitioner filed a petition with the probate court to determine the validity of a trust amendment, claiming that respondent had refused to honor the Memo as a valid amendment to the Trust. In July 2021, petitioner moved for summary disposition under MCR 2.116(C)(10), arguing that no genuine issue of material fact existed as to whether the Memo was a valid trust amendment that required respondent to distribute a minimum of $50,000 from the Trust to petitioner. A hearing on petitioner's motion was held in August 2020. Following the hearing, the probate court issued a written opinion and order in which it rejected respondent's argument that it could be inferred that Storto had destroyed the original Memo. The probate court determined that petitioner had carried her burden to present evidence that the original Memo existed at the time of Storto's death, in the form of petitioner's affidavit stating that she had given the original Memo to respondent within a binder of Storto's estate planning documents. Further, the probate court found that respondent had failed to provide evidence refuting petitioner's claim, because respondent's testimony that she had received either an original or a copy of the Memo separate from the binder and copied and returned it did not contradict petitioner's evidence. The probate court also found that the Memo substantially complied with the Trust's method for amendment, as required by statute, and that the Memo was not merely an attempt to distribute personal property. The probate court granted petitioner's motion for summary disposition, confirming the validity of the Memo as a trust amendment.

## II. STANDARD OF REVIEW

This Court reviews de novo the probate court's ruling on a motion for summary disposition. *Grossman v Brown*, 470 Mich 593, 598; 685 NW2d 198 (2004); see also *Bronson Methodist Hosp v Auto-Owners Ins Co*, 295 Mich App 431, 440; 814 NW2d 670 (2012). Summary disposition is warranted when "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law."

---

[2] In other words, both petitioner and respondent claimed that the other was in possession of the original Memo.

[3] The ownership of the vehicle, home and timeshare are not at issue on appeal.

MCR 2.116(C)(10). When moving for summary disposition under MCR 2.116(C)(10), the moving party has the initial burden to identify "the issues as to which the moving party believes there is no genuine issue as to any material fact." MCR 2.116(G)(4); see also *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 9; 890 NW2d 344 (2016). If the moving party properly asserts and supports his or her motion for summary disposition, the "burden then shifts to the opposing party to establish that a genuine issue of disputed fact exists," with more than mere allegations or denials in their pleadings. *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003); see also *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

"[S]ummary disposition is premature if granted before discovery on a disputed issue is complete. However, summary disposition is appropriate if there is no fair chance that further discovery will result in factual support for the party opposing the motion." *Gillette Commercial Operations North America & Subsidiaries v Dep't of Treasury*, 312 Mich App 394, 447-448; 878 NW2d 891 (2015) (quotation marks and citations omitted; alteration in original). In considering a motion for summary disposition, the court need only consider the evidence identified by the parties. See *Barnard Mfg Co v Gates Performance Engineering, Inc*, 285 Mich App 362, 377; 775 NW2d 618 (2009). The court must consider the pleadings, affidavits, depositions, admissions and other documentary evidence submitted in the light most favorable to the nonmoving party, see MCR 2.116(G)(5); *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012), and must draw all reasonable inferences in favor of the nonmoving party, see *Dextrom v Wexford County*, 287 Mich App 406, 415-416; 789 NW2d 211 (2010). The probate court may not make findings of fact or weigh credibility in deciding a motion for summary disposition, *Patrick v Turkelson*, 322 Mich App 595, 605; 913 NW2d 369 (2018), and is limited to considering the evidence that had been presented to the probate court at the time the motion was decided, *Innovative Adult Foster Care, Inc v Ragin*, 285 Mich App 466, 475-476; 776 NW2d 398 (2009).

This Court also reviews de novo whether the probate court properly interpreted the relevant statutes, *Makowski v Governor*, 317 Mich App 434, 441; 894 NW2d 753 (2016), and the probate court's construction of the language of a will or trust. *In re Reisman Estate*, 266 Mich App 522, 526; 702 NW2d 658 (2005).

III. ANALYSIS

Respondent argues that the trial court erred by granting petitioner's motion for summary disposition and declaring the Memo to be a valid amendment of the Trust. We disagree.

"In resolving a dispute concerning the meaning of a trust, a court's sole objective is to ascertain and give effect to the intent of the settlor," which is "to be carried out as nearly as possible." *In re Kostin Estate*, 278 Mich App 47, 53; 748 NW2d 583 (2008). A court must attempt to give meaning to every word in a trust instrument. *Reisman Estate*, 266 Mich App at 527. "The rules of construction applicable to wills also apply to the interpretation of trust documents." *Id*. When only a copy of an original will is available after a testator's death, "there is a rebuttable presumption that the testator destroyed the will with the intent to revoke it." *In re Christoff Estate*, 193 Mich App 468, 473; 484 NW2d 743 (1992).

In this case, the evidence regarding the fate of the original Memo presented to the probate court was: (1) petitioner's statements in her affidavit that the original Memo was in the estate planning binder she delivered to respondent after the death of the testator, (2) respondent's deposition testimony that "[t]o the best of [her] knowledge" the Memo was *not* in the binder she received from petitioner, and (3) respondent's deposition testimony that, on a different occasion from the time when petitioner delivered the binder, petitioner brought her either an original or a copy of the Memo, which respondent copied and returned to petitioner. Given the presumption of revocation if an original estate document is not located after the death of the testator, the preliminary question for this Court is whether there is a genuine issue of material fact regarding whether the original Memo existed at the time of the testator's death.

A grant of a motion for summary disposition is "especially suspect where motive and intent are at issue or where a witness or deponent's credibility is crucial." *Vanguard Ins Co v Bolt*, 204 Mich App 271, 276; 514 NW2d 525 (1994). However, "[p]arties opposing a motion for summary disposition must present more than conjecture and speculation to meet their burden of providing evidentiary proof establishing a genuine issue of material fact." *Fields v Suburban Mobility Auth for Regional Transp*, 311 Mich App 231, 237-238; 874 NW2d 715 (2015) (quotations marks and citation omitted).

As this Court has observed, if caselaw regarding the "credibility exception" to the nonmoving party's burden of proof were to be "accepted at face value, summary disposition would rarely be appropriate because one could almost always argue that a finder of fact might disbelieve a witness's testimony involving an essential element of a claim or defense." *Franks v Franks*, 330 Mich App 69, 86; 944 NW2d 388 (2019). And yet our Supreme Court has rejected restricting the use of summary disposition to cases in which it is *impossible* for the claim or defense to be supported at trial, *Smith v Globe Life Ins Co*, 460 Mich 446, 455 n 2; 597 NW2d 28 (1999), superseded by statute as stated in *Dell v Citizens Ins Co of America*, 312 Mich App 734, 742; 880 NW2d 280 (2015), and has required the nonmoving party to produce evidence putting the affiant's or deponent's credibility at issue to survive a motion for summary disposition. See *Debano-Griffin v Lake County*, 493 Mich 167, 180-181; 828 NW2d 634 (2013); *White v Taylor Distrib Co, Inc*, 482 Mich 136, 142-143; 753 NW2d 591 (2008). Respondent has failed to carry this burden. Petitioner made a sworn statement that the original Memo was in the binder when she handed it over to respondent after Storto's death. Respondent offered no evidence that this statement was false, but only stated that to "the best of [her] knowledge" the Memo was not in the binder when it was turned over. More importantly, respondent admits to seeing, and copying, the Memo after Storto's death. Respondent presents no evidence that the Memo she observed was a copy, only noting that she had not verified whether the document she copied and returned to petitioner was an original. We conclude that the probate court did not err by determining that respondent had not established a genuine issue of material fact concerning whether the original Memo had been revoked by Storto before his death, even considering the presumption of revocation (which petitioner rebutted by presenting evidence that the original Memo was located in Storto's estate planning binder after his death). *Christoff Estate*, 193 Mich App at 473.

Even if the Memo was not revoked, respondent also argues that the probate court erred by determining that it is a valid amendment to the Trust. We disagree. Respondent argues that because the rules of construction for wills apply to trust documents, the statutory provisions regarding the validity of writings amending and supplementing wills also apply to trusts.

Therefore, respondent argues, MCL 700.2513 renders the cash gift portion of the Memo invalid. MCL 700.2513 states: "[A] will may refer to a written statement or list to dispose of items of tangible personal property not otherwise specifically disposed of by the will, other than money." Respondent characterizes the Memo as an attempt to dispose of personal property, which fails because of the inclusion of a cash gift, which is expressly forbidden by the statute.

The Michigan Trust Code speaks directly to the manner of amendment of a trust in MCL 700.7602(3):

The settlor may revoke or amend a revocable trust in any of the following ways:

(a) By substantially complying with a method provided in the terms of the trust.

(b) If the terms of the trust do not provide a method or the method provided in the terms is not expressly made exclusive, in . . . the following way[]:

(*i*) If the trust is created pursuant to a writing, by another writing manifesting clear and convincing evidence of the settlor's intent to revoke or amend the trust.

MCL 700.7602(3) was interpreted by this Court in *In re Stillwell Trust*, 299 Mich App 289; 829 NW2d 353 (2012). In *Stillwell*, the terms of the trust permitted the settlor to amend the trust by a writing delivered to the trustee. *Id*. at 292. The settlor handwrote notes amending her trust, notes that she ensured would be delivered to the successor trustee on her death or incapacitation by handing them over to her grandson and instructing him accordingly. *Id*. Although the settlor's notes were unsigned and not labeled as an amendment, this Court held that they were a valid amendment to the trust, concluding that the settlor's intent to amend was evident from her act of placing the documents in an envelope addressed to the successor trustee, marked with specific instructions regarding the entire estate, and the inclusion of the notes as directives regarding the distribution of her assets under the trust. *Id*. at 295-296. This Court held that "Stillwell substantially complied with the terms of the trust that governed an amendment when she drafted the handwritten notes and ensured that they were delivered to the successor trustee upon her incapacitation." *Id*. at 297.

In this case, similarly as in *Stillwell*, Storto ensured that the Memo would be delivered to the successor trustee upon his death, by writing and signing the Memo and keeping it with his estate documents in a location in which he instructed respondent and petitioner to find such documents upon his death. Furthermore, Storto fully complied with the terms of the Trust regarding amendments, by making a writing changing the terms of the Trust, signing the writing, and delivering it to himself as the trustee before his death. Notwithstanding the fact that the Memo was not labeled as an amendment, the probate court did not err by holding that the Memo was

intended as such by Storto, who complied with the terms of the Trust and therefore produced a valid amendment. *Stillwell Trust*, 299 Mich App at 295-297.[4]

Because the Memo qualifies as an amendment to the Trust under MCL 700.7602(3), it is not merely a list disposing of personal property. Therefore, MCL 700.2513's proscription on distributing cash gifts does not apply, and the probate court did not err by holding the amendment to be valid.

Affirmed.

/s/ Michael J. Kelly
/s/ Mark T. Boonstra
/s/ Brock A. Swartzle

---

[4] Respondent argues that this case should be controlled not by *Stillwell*, but by an unpublished case, *In re Bisbikis Trust*, unpublished per curiam opinion of the Court of Appeals, issued November 20, 2014 (Docket No. 317588), that centered on the question of the validity of a personal letter to the testator's wife as a trust amendment. We disagree. Not only is reliance on a nonbinding unpublished case disfavored, see *Glasker-Davis v Auvenshine*, 333 Mich App 222, 232 n 4; 964 NW2d 809 (2020), but the personal letter in *Bisbikis* "contain[ed] language that strongly suggest[ed] that Bisbikis did not intend to alter his trust" and was only attempting to clarify the planned distribution of his property to his wife. *Bisbikis*, unpub op at 3.